*Lancaster,*
*Saturday,*
May 25.

## WALLIS *against* MEASE.

So long as wild bees remain in the tree where they have hived, notwithstanding the tree is upon the land of an individual, and he has confined them in it, they are not the sub-ject of a felony; and therefore proof of their having been ta-ken with their honey from such a tree by a third person, is not a justifica-tion of words imputing a felo-ny to such third person.

After the words laid in the declaration are proved, the plaintiff may give in evidence other words, ac-tionable in themselves, and spoken since the suit brought, to shew the malice of the defendant.

THIS was an appeal from the decision of Judge *Yeates* at a Circuit Court for *Dauphin* in *May* 1809.

It was an action of slander brought against *Mease* for say-ing of the plaintiff, " you are a damned thief, and I can prove " it;" to which the defendant pleaded " not guilty, with leave " to justify."

On the trial of the cause, after proof had been made of the words laid in the declaration, the judge, at the instance of the plaintiff's counsel, permitted evidence to be given by a witness, that in the autumn of 1803 she heard the defendant say " he had called the plaintiff a thief, and would prove it " before all the people of *Harrisburg*. He had stolen *Har-* " *man's* bottle." This action was brought to *March* term 1803, and the trial was on the 31st *May* 1809.

Under the plea of justification, some evidence was given to shew that the plaintiff had in the night time been concern-ed in taking a swarm of wild bees, together with their honey, from the top of a tree on the land of another man, who had confined them in their hive or *skep;* but his honour, in addi-tion to the circumstance that he did not think there was proof of the plaintiff's participation in this act, charged the jury, that if they were satisfied it was the practice and usage in the county, for the person who discovered a bee tree on another man's land to take it without being considered as any more than a trespasser in cutting the tree, it ought to weigh greatly in favour of the plaintiff; his opinion of the law was, that such an act did not amount to a felony.

The jury found a verdict for the plaintiff, with forty dollars damages, which the judge refused to set aside, and the defendant appealed.

*Hopkins* for the appellant contended that the verdict was against the weight of evidence; but he principally insisted upon the error of the judge before whom the cause was tried, in permitting evidence to be given of actionable words after the suit brought, and in charging the jury that taking a swarm of bees from a tree on the land of another man, was not felony.

As to the first point, he said it was too plain for argument, that a cause of action subsequent to the suit, could not be given in evidence to support the suit; and it was as much an ingredient in the plaintiff's case that the defendant had spoken the words with *malice*, as that he had spoken them at all; of course it was as essential to prove malice in order to support the suit, as to prove the words; and hence, if the subsequent words were admitted to shew malice, it was in fact admitting a subsequent cause of action to support the suit. If these actionable words were to have any effect besides this, it was to inflame the verdict of the jury, which was as bad a ground for them as the other. In fact, the jury could not pay the least attention to them, without increasing the damages. That was the plaintiff's object no doubt. But can they be twice visited upon the plaintiff, in the present action, and in a subsequent one? In a subsequent one it is plain that upon general principles they may, because they are actionable in themselves, and are not charged in the present declaration. It ought to follow then as a general principle that they could not be used in this. There is however a particular reason why they ought not. These words, if spoken, were buried in oblivion by the act of limitations; the admission of them therefore was to allow the benefit of them indirectly, and to surprise the defendant, when directly and after notice they would have been barred by the statute. I admit that any thing may be given in evidence to aggravate the damages in trespass which will not of itself bear an action, although the old and by far the more reasonable rule, was otherwise; *Bull. N. P.* 89.; for why permit an act which is not an injury by itself, to receive the indemnity due to an injury, merely because another act by the same party

1811.

WALLIS
v.
MEASE.

was really injurious? But no decision goes the length of permitting the damages to be aggravated by acts which may be the foundation of another suit; and it does appear that such a doctrine might be the means of severe oppression upon defendants.

As to the felony, if the bees were reduced to the dominion of the owner of the land, they were as much the subject of property, and of course of felony, as if they had been lodged in an artificial hive. The tree was the property of that owner, and he confined the bees within it. They were under his dominion, and were unquestionably his property. The practice of the country was of no importance as to the question of law.

*Fisher* and *Laird* for the plaintiff. Except so far as relates to the distinction between words actionable and not actionable, the first point has been settled in *Geare* v. *Britton* (a), that after the plaintiff has proved the words as laid in the declaration, although he cannot give evidence of any loss not expressly laid, he may give evidence of other expressions made use of by the defendant, as a proof of his ill will towards him. The legitimate use of such evidence is not to swell the damages, because they must arise out of the particular injury in the suit; nor is it to support the action, by proving the words laid to have been malicious, in case their malignity does not appear from the manner and circumstances of speaking them; but it is to shew the general disposition of the defendant toward the plaintiff, and thus to rebut any presumption in favour of the former, from a supposition that he has spoken such or similar words but once. If however their use is to shew the malice of the words laid, it is a lawful use of them, because the malice of these words is to be proved by extrinsic circumstances which cannot be laid in the declaration; and when it is proved, the plaintiff obtains damages not for any thing in the circumstances which he has used as *proof* of malice in the words laid, but for the malice itself in the words laid, which is quite independent of the proof. As it is clear then that the damages are not to be affected by the evidence of subsequent

(a) *Bull. N. P.* 7.

words, of what importance is it whether those words are actionable or not, or whether they are barred by the statute or not? The opposite argument is founded in a misconception of the legal effect of such evidence. Damages ought not to be given for words not laid in the declaration; and therefore, when an action is brought for words which have been used in a prior action to shew ill will, the defendant will not be injured by being made to pay damages for them.

1811.

WALLIS
v.
MEASE.

Bees are *feræ naturæ*. If reclaimed and domesticated as they sometimes are, they are the subject of a qualified property, that is, so long as they remain with the person who hived them. But bees in the forests of our country, or in their original hive, are not the property of the man who owns the tree, more than any of the animals of the forest. It is the universal practice of the country to hunt them, and to take them wherever found in their wild state.

The cause was argued at *May* term 1810, and kept under advisement until this term, when the judges delivered their opinions.

TILGHMAN C. J. This is an action of slander for calling the plaintiff a thief. The defendant pleaded not guilty, with leave to justify. Two exceptions are taken to the opinion of the judge, before whom the cause was tried. In the first place he charged the jury, that the plaintiff could not be guilty of felony, by taking a swarm of bees and their honey from the tree of another man, which the owner of the tree had reduced to possession, by confining them while in the top of the tree.

I believe there is no instance of a man's being convicted of felony in *Pennsylvania* for an act of this kind. It is undoubtedly a wrong; but I am not for extending the law of felony farther than it has been carried, in a case which is not of an atrocious nature. The taking of *wild bees*, has been considered by the people of the country as a species of hunting. Bees are of a *wild nature;* and without deciding what the law might be, if they were removed from the tree, and secured in a hive, I am of opinion, that while they remain in the tree, they are not the subject of a felony. This wild nature remains unchanged, nor are they completely, and for any valuable purpose, reduced to possession.

WALLIS
v.
MEASE.

The second and more difficult question is, whether the judge was right, in permitting the plaintiff, to give in evidence, other words than those laid in the declaration, actionable in themselves, and spoken since the suit was brought. It must be considered as settled, that the plaintiff after proving the words laid in the declaration, may give in evidence other words, *not actionable*, by way of shewing the malice of the defendant. If it were not so settled, I should very much doubt the propriety of such evidence, because it may take the defendant by surprise; nor does it seem clear, that the malice of the defendant's heart at the time of speaking the words for which the suit is brought, can be fairly inferred from words spoken at a subsequent time, no way relating to those which are the cause of action. But assuming it as I must do, as a principle, that subsequent words may be given in evidence, I can see no reason for a distinction between words actionable and not actionable, or between words spoken before suit brought, and words spoken after.

The subsequent words are received as evidence, only to shew the mind and intent of the defendant, when he spoke the words which are the cause of action; and the damages are or ought to be given solely on account of the words laid in the declaration. This should be explained to the jury by the judge who tried the cause; and if they do their duty, they will give no damages for any words but those in the declaration. In this point of view, it can make no manner of difference, whether the subsequent words are actionable or not, or at what time they were spoken, because no damages are given for them. I confess there is danger, that in fact the jury may not confine themselves to their true line of duty, and for that and the reasons I have given before, if I considered myself at liberty, I would reject all evidence of this nature. But holding myself bound by former decisions, I must say that the evidence in this case was properly admitted.

BRACKENRIDGE J. A principal ground for a new trial in this case is stated to be, that the judge charged the jury, that *if they were satisfied that it was usual in the country to suppose that the finder of a bee-tree might take the honey,*

*without being considered any thing more than a trespasser, it would weigh in favour of the plaintiff.* It is impossible to say that it would not weigh, if this way of thinking was correct. For in that case, it would be but an understanding of what was law. But it could weigh only in a moral point of view, and raise a presumption that he did not mean to commit a felony, or think that he was committing one. The popular understanding could only go to the *quo animo* with which he did the act. For a man committing *a trespass*, which in the popular opinion, and in his own, was a felony, might not be intitled to the same damages on being charged with felony, with one who thought it only a trespass as it really was. But if the taking the honey was actually a felony, the thinking it otherwise could not reduce it from a felony, and make it only a trespass. For even the understanding of a whole people contrary to the law, would not make it cease to be a crime. It is not in a criminal case that the maxim applies, *communis error facit jus.*

The direction of the judge can be considered incorrect, only in consideration that the taking honey under the circumstances of the case was a felony. For it is only in this point of view that it can affect the question of *guilty or not guilty.* Let us then consider the fact of taking honey from what is called *a bee-tree at midnight, and with a disposition to conceal.* The concealment may shew the *animus furandi*, or an intention to commit a felony; yet if a felony was not committed in the act, the intention, however it may be in a moral point of view, will not in law make it felony. The question then will be, whether the taking honey *from a tree on the land of another*, with an intention of concealment, will amount to felony. *This must depend on the honey being the property of the owner of the land.* If the bees are his property, the honey is; for it is the manufacture of his hive. It is the production of what may be called his flock. But this requires proof in the first instance, that *the bees are his property.* The treeing on his land may form some presumption of it; but this is not sufficient in a criminal case, when it is notorious in natural history, that there are wild bees, or bees *feræ naturæ* as is the learned phrase. Bees not reclaimed from their wild nature and domesticated, are not the subject

of property, any more than wild fowl, or wild beasts. It cannot necessarily be inferred therefore, that the honey made in a tree on another's land, is made by the *bees of the owner of the land*. But it may be made out of the vesture of his land, and therefore *his property*. " *The bee sits on the bloom* " *extracting liquid sweet;*" and if the flowers are his, the honey is his property. For though it is changed by *constipation*, "*purissima mella stipant*," yet it is but the liquid condensed or thickened by working into honey; and the taking away butter is not the less a theft, because the taker had churned it from the milk of another. Here however a difficulty occurs; it may not have been the *herbagium terrœ*, the herbage of the owner of this land, from whence the liquid was extracted that was made into honey. Bees do not confine themselves to the fruits or flowers growing near, but move to a distance; " *Floriferis ut apes in saltibus omnia* " *libant*." It cannot therefore be made out to a certainty that the honey has been made *out of the grass, or vegetables, of the owner of the land on which the tree is*.

This may seem an investigation to a minuteness partaking of the ridiculous. But it has not seemed to me possible to treat it otherwise. For though *in tenui labor*, yet the subtilty becomes necessary in order to discriminate. I have no idea that the understanding of the country could make it more or less a felony to take honey from the *alveare*, or to use the *Anglo Saxon* word, the *skep* of a bee-tree on another man's land; yet it does not follow, that it cannot be considered but a felony; and this I take it is the objection to the charge of the judge, that it did not depend upon the understanding of the country whether it was felony or otherwise, but upon the *common law, by which it did not necessarily follow that it was felony*.

My idea of the common law, in this particular, is deduced from principle; and is the same with that of the *Roman civil law*. " Apium quoque fera natura est. Itaque quæ in arbore " tua consederint, antequam a te alveo includantur, non magis " tuæ intelliguntur esse, quam *volucres* quæ in arbore tua ni- " dum fecerint. Ideoque si alius eas incluserit, is earum domi- " nus erit. Favos quoque, si quos effecerint, eximere quilibet

"potest. Plane integrâ re, si prævideris ingredientem fun-
"dum tuum, poteris eum jure prohibere ne ingrediatur."

Aldobrand in his note on this, thinks that the occupancy, by being in the tree on the land of another, gave a property. "Dominus fit per occupationem." But I incline to think that such occupancy does not give a property. A trespass would be committed in coming upon the land to take the bees or combs in this case, but not in taking the bees or combs would there be a trespass, if they could be taken without coming on the land, much less a felony. It is the same as with wild fowl who have been brooded and are roosting upon the land, which if they could be taken without ingress, there would be not even a trespass.

Another objection to the charge of the judge, has more solidity; or rather, I mean to say, is more difficult to remove. It is, that evidence was admitted, though objected to, of words spoken since the bringing the action, that are in themselves actionable; words to the same effect with those laid in the declaration, but spoken after suit brought. I take it they might be given in evidence to repel an allegation of having been originally spoken without malice, if that were the defence that were set up. But whether they can be given in aggravation of the malice, is more difficult to support. Defamatory words imply malice; but accompanied with words indicating ill will, whether at the time of speaking, or at any other time, may be evidence of actual malice, which aggravates the wrong of speaking; more especially on the plea of non cul, which goes to the malice with which the words are spoken, as well as to the speaking of the words. Hence it is, that evidence of an acknowledgment made after suit brought of having spoken the words, would be evidence of the speaking; and the speaking the same words after suit brought, would raise a presumption in support of what was alleged, that such words had been spoken before suit brought; and on the same principle, would raise a presumption that they had been spoken maliciously.

There is nothing in the argument from the statute of limitations; for the words laid in the declaration must be proved to have been spoken within the year, before evidence can be given of any spoken after suit brought. But it may be

said with more solidity, that the giving evidence of words spoken after the suit brought, and the recovery on the aggravation of them, cannot be *pleaded in bar to a new action for the same words*, if actionable. I do not see but that the special matter might be pleaded, and given in evidence. It would prevent the multiplying of suits, *embracing all that preceded the trial*, subject only to this consideration, *that the defendant is not taken by surprise, as to any evidence offered.*

In trespass real, and in nusance, the continuance is not admissible in evidence, in aggravation; but a new action must be brought on the continuance; and so *toties quoties.* But there is a difference; for in these cases the *quo animo* is not the gist of the offence, nor does the allegation depend so much upon the conception and memory of witnesses, or general disposition of the alleged wrong-doer towards him that is wronged, as on the mere matter of fact, *the thing being done*, the only qualification of which can be *voluntary* or *involuntary*, with regard to the damage; though I do not see the inconvenience of proving damages even up to the time of trial in the case of trespass real, or nusance, as the jury computes interest on a bond up to the time of trial, under the head of damages, and the court will give judgment; unless perhaps the preserving the separation and simplicity of cause of action, and confining the demand, have the superior advantage.

In the case of a personal trespass, assault and battery, evidence of what has taken place since the suit brought, may be given in evidence to increase the damages, such as debility or the losing the use of a limb. This as shewing the extent of the trespass laid in the declaration. On the same principle, in slander, where the *per quod* or special damage is the gist of the action, the effect may be shewn by what has been consequent to the suit brought, provided a special damage has been proved sufficient to support the action. It is not therefore correct to say, that in all cases no evidence can be given that has relation to a fact *after suit brought, and before trial.* In *Buller N. P. 7.* it is said, that though he (the plaintiff) " cannot give evidence of any loss " or injury not laid in the declaration, yet after he has proved " the words as laid, he may give evidence of other expres-

1811.

WALLIS
v.
MEASE.

" sions made use of by the defendant, as a proof of his ill
" will towards him." This in the reason of it goes to words
*spoken after suit brought, as well as before;* and I can draw
no distinction between words actionable and not, as to the
admissibility, but *à fortiori* as to the effect; and by pleading
or averment, the having been given in evidence may be
shewn, should another action be brought on the ground of
speaking these.

New trial refused, and
Judgment confirmed.

For cases on the first point, see *Charlter* v. *Barret, Peake's
N. P. Cases,* 22., *The King* v. *Pearce, ib.* 75., *Mead* v.
*Daubigny, ib.* 125., *Lee* v. *Huson, ib.* 166.

For the second point, see 2 *Bl. Comm.* 392., *Bro. Abr.
title Property* 37.