## WILLIAMS *against* MINER.

Where the plaintiff, in an action of slander containing two counts, having proved the slanderous words, as alleged in those counts, offered evidence of words subsequently spoken by the defendant, imputing the same crime; it was held, that such evidence was admissible, not as showing separate grounds of action, but to prove the malice of the defendant in speaking the words first proved.

Where the slanderous words charged the stealing of *D's* hay; and the defendant offered evidence to prove, that the hay, which was the subject of the theft so charged, was the joint property of the plaintiff and *D,* so that in legal effect no such crime was, or could have been, committed; it was held, that, as the charge was unequivocally a charge of theft—so intended and so received—the evidence offered by the defendant was inadmissible.

In an action of slander, the law does not require literal proof of the words stated in the declaration, but only proof of words of the same sense and import.

Therefore, where the words charged in one count, were, " He is a thief," and in another, " He is a thief, and stole the hay and hay-seed from *D's* barn," and the proof was, that the defendant said, at one time, that " He was a thief, and stole the hay-seed out of the barn," and at another, that " He had stolen hay and hay-seed that belonged to *D;*" it was held, that the words charged were sufficiently proved.

In an action of slander, the defendant, under the general issue, without notice of special matter in defence or justification, may prove, to repel the presumption of malice and in mitigation of damages, facts and circumstances, showing a reasonable ground of belief in the defendant of the truth of the words, but not amounting to proof of their actual truth.

Therefore, where the slanderous words charged the plaintiff with having stolen the hay and hay-seed of *D;* and the defendant, on the general issue, and without notice of special matter in defence or justification, offered evidence to prove, that the plaintiff had taken and converted to his own use, hay and hay-seed of *D,* without her knowledge and against her consent; it was held, that such evidence, not conducing to prove the charge of theft, the *animus furandi* being wanting, was admissible, to repel the presumption of malice and in mitigation of damages.

THIS was an action of slander. The declaration contained two counts. In the first, the alleged slanderous words were—" He is a thief." In the second, they were—" He is a thief, and he stole the hay and hay-seed from Mrs. *Dow's* barn." The defendant pleaded the general issue, without notice of special matter in defence, or by way of justification.

The cause was tried at *New-London, September* term, 1846, before *Hinman,* J.

On the trial, the plaintiff, to prove the speaking by the defendant of the slanderous words set forth in the declaration,

first read in evidence the deposition of *Betsey Walden*, in which she testified, that the defendant, some time in the month of *April* 1844, came to the house of the witness, and said in her hearing, that the plaintiff went to Mrs. *Dow* to get some hay; that Mrs. *Dow* would not let him have any; that he then went into the barn, and took hay, and foddered his cattle, for she saw five heaps of hay that he had given to his cattle, and it was Mrs. *Dow's* hay; that this was not all he had foddered them; that he had stolen the hay, and carried it round the hill, and foddered them: that she said, he was a thief, and had stolen the hay-seed out of the barn; and that she was not afraid to say so. The plaintiff also, for the same purpose, introduced *Russell Bogue*, as a witness, who testified, that the defendant, at a different time, from that mentioned by *Betsey Walden*, said of the plaintiff, that he had stolen hay and hay-seed that belonged to Mrs. *Dow;* that she knew the hay belonged to Mrs. *Dow*, because it was clover hay, and he (the plaintiff) had none of that kind: she said, it was stolen from Mrs. *Dow's* barn. On cross-examination, this witness testified, that at the time of the defendant's speaking these words, he understood her to refer to hay, that had been cut and put into Mrs. *Dow's* barn, before the plaintiff put any hay there, and which belonged to Mrs. *Dow;* but that the hay-seed, to which she referred, he supposed was the seed that fell from the hay put into the barn, at the time the plaintiff occupied Mrs. *Dow's* farm on shares; and this constituted the whole accusation, as sworn to by this witness.

The plaintiff then introduced *Thomas Champlin*, as a witness, who testified, that at a different time from that sworn to, by either of the other witnesses, the defendant said, that the plaintiff had stolen Mrs. *Dow's* hay, and fed it to his oxen. The plaintiff also offered *David Congdon*, as a witness, who testified, that in another conversation with the defendant, she said of the plaintiff, that he was a liar and knave, and would steal hay; and was a thief, and had stolen hay. The plaintiff also offered *Asa Walden*, as a witness, who testified, that in the month of *April* 1844, but at a different time from that referred to by the other witnesses, he heard the defendant say, that the plaintiff had stolen hay and hay-seed, and was a thief; that at another conversation about the same time, she said, he had stolen hay, and carried it over the hill, and fod-

*New-London, July, 1847.*

Williams
*v.*
Miner.

dered it out to his cattle; and that she had seen five heaps of hay.

To the admission of the evidence of the three last named witnesses, the defendant objected, on the ground that the plaintiff having offered evidence of the alleged slanderous words by the defendant, at two different times, in proof of the two counts in the declaration, could not give evidence of other slanderous words, spoken by the defendant at different times. The court admitted this evidence, for the purpose merely of showing the motives of the defendant in speaking the words sworn to by the two first witnesses.

The defendant, in order to show that the hay and hay-seed referred to in the testimony of *Russell Bogue,* were owned by the plaintiff and Mrs. *Dow* jointly, as tenants in common, enquired of the witness, whether the farm of Mrs. *Dow* and the barn thereon, were, during the time referred to by the defendant, as the time when the plaintiff stole the hay, in the joint occupation and possession of Mrs. *Dow* and the plaintiff; and whether it was not occupied on shares by the plaintiff, and the hay and hay-seed owned by them jointly.

To this inquiry the plaintiff objected; and the court refused to admit it, in order to prove the ownership in common by the plaintiff and Mrs. *Dow,* of the hay and hay-seed, referred to by the witness, *Bogue,* in his testimony.

The defendant then offered in evidence the deposition of Mrs. *Dow,* in which she testified as follows: " Since the death of my husband, *Lorenzo Dow,* I have been in the possession and occupation of the premises formerly owned and occupied by him. Three years ago last *April, Ephraim M. Williams* [the plaintiff,] took, to improve on shares, the lots *North* of the house, the mowing lot *West* of the house, and in short, the principal part of the farm. He was to cut the hay on halves, and improve the farm at the halves, each to find an equal part of the stock. Mr. *Williams* put more stock on to the farm than I did. At the time he went into the occupancy of the farm, there was in the barn one half of the mow, on the *South* side of the barn, over the stable, filled with clover hay, of a large growth, which belonged to me, and had been placed there, by Mr. *Fitch,* the year before, prior to the time when Mr. *Williams* came into possession. This mow of clover hay remained unbroken. Not having used any part

of it myself, nor authorized any one to, about the 10th of *New-London,* July, 1847.

Williams *v.* Miner. *May,* I went to the barn, for the purpose of seeing if any of my hay was gone, and if Mr. *Williams'* cattle were there feeding upon it. I found both racks on each side of the yard, partly filled with my clover hay, and Mr. *Williams'* oxen were there feeding from one of the racks. I saw Mr. *Williams*, at the same time, standing on the barn floor. I asked him, if I had agreed to keep his cattle for him ? He said, no ; there had been nothing said about it. He said, he did not know but he might fodder out the hay there was in the barn, and leave as much more there next *Spring*. I told him, the hay that was there, I knew what it was, and chose to keep it there. Mr. *Williams* soon yoked up the cattle, and drove them off. Afterwards, I think on the next day, I went into the lot back of the barn, and saw the remains of eight heaps of this clover hay, where animals had apparently been fed, the stalks or butts of the clover remaining. I then went into the yard, and found a large bunch of orts of clover hay, where a horse had evidently been fed. I then opened the doors of the barn, and looked in, and saw that there was a quantity of this clover hay missing. At this time, Mr. *Williams* had no hay in the barn ; nor had he any on the farm. The next day after my conversation with Mr. *Williams*, I saw him cart a load of hay, by my house, towards his own house. At the time I saw the eight heaps of hay, in the lot *North* of the barn, Mr. *Williams* had cattle in that lot. I saw two cows and a yearling, that I knew belonged to him. There were no cattle of my own there ; nor had there been any about that time. Soon after Mr. *Williams* had done mowing, I should think in the forepart of *August*, I went to the barn, to see if some hay-seed I supposed was there, had been removed. It was seed I supposed would come from hay, owned by myself and Mr. *Williams*, in which he was a joint owner with myself. The barn floor looked as though it had been swept, and the seed removed. I, at no time, ever authorized Mr. *Williams* to feed out any of my hay to his animals. At the time Mr. *Williams* came into possession, I had two cows and one yoke of oxen. At the time I had the conversation with Mr. *Williams*, my oxen were on the farm, but my cows were not. When the oxen were here, they were foddered here. I had fine hay in the bay. The quantity of

*New-London,*
July, 1847.

Williams
*v.*
Miner.

clover hay that was gone, when I looked at it, I should think was 200 or 300 cwt.—I am no judge, and cannot say definitely."

The defendant also offered this deposition as to other matters therein stated, in mitigation of damages. The court, however, refused to admit the deposition for any purpose, and would not allow it to be read in evidence to the jury.

The defendant offered *David G. Gates,* as a witness, proposing to prove by him, that in the month of *April* 1843, during the time the plaintiff was in the joint possession with Mrs. *Dow* of the farm, he saw the cattle of the plaintiff, eating the clover hay of Mrs. *Dow,* in the yard adjoining the barn, directly opposite the house occupied by Mrs. *Dow;* and that this occurred in the afternoon, and was by the side and in plain view of the public highway.

To the admission of this witness for this purpose, the plaintiff objected ; and the court refused to admit his testimony.

In the argument of the cause to the jury, the defendant's counsel claimed, that the testimony of *Betsey Walden,* varied from, and did not sustain, the allegation regarding the speaking of the words, in either count of the declaration. The defendant's counsel also made the same claim in relation to the testimony of *Russell Bogue,* and asked the court so to charge the jury.

The court did not so charge the jury ; but charged them, that there was no variance between the proof of the words stated by these witnesses to have been spoken, and the allegations in the declaration.

The plaintiff obtained a verdict, for sixty dollars damages ; and the defendant thereupon moved for a new trial for a misdirection.

*Rockwell* and *Wait,* in support of the motion, contended, 1. That after the plaintiff had given evidence of the speaking of the words charged in the two counts of the declaration, in two distinct conversations, at different times, no evidence of words afterwards spoken, for which an action would lie, could be received, either to show malice, or for any other purpose. The words sworn to, by *Champlin, Congdon* and *Asa Walden,* charged the stealing of hay. These words were actionable of themselves ; and if proveable, the defen-

dant might be compelled to pay a two-fold compensation for

the same injury. *Leigh's N. P.* 1396,7. *Mead* v. *Daubigny, Peake's Ca.* 125. *Finnerty* v. *Tipper,* 2 *Campb.* 72. *Stuart* v. *Lovell,* 2 *Stark. Ca.* 93. *Defries* v. *Davis,* 7 *Car. & Pa.* 112. (32 *E. C. L.* 460.) *Howell* v. *Cheatham, Cooke's Ca.* 248. *Thomas* v. *Croswell,* 7 *Johns. R.* 264. 271. *Mix* v. *Woodward,* 12 *Conn. R.* 292,3.

2. That the testimony of *Bogue* and part of the deposition of Mrs. *Dow* should have been admitted, to show that the hay and hay-seed, which the defendant charged the plaintiff with having stolen from Mrs. *Dow*, were the joint property of the plaintiff and Mrs. *Dow ;* and therefore, the taking thereof, or any part thereof, by the plaintiff, could not be theft. The act of the plaintiff, which the defendant called theft, when explained by the testimony in question, was not only no theft, but was not even a trespass. Words imputing an offence to the plaintiff, under such circumstances that he could not in the eye of the law commit such offence, are not actionable. *Bul. N. P.* 5. *Leigh's N. P.* 1353,4. 2 *Stark. Sland.* 96,7. *in notis.* This doctrine was recognized, directly or impliedly, in *Oldham* v. *Peake,* 2 *Bla. R.* 959. *Peake* v. *Oldham,* in err. *Cowp.* 275. *Roberts* v. *Camden,* 9 *East* 96. *Thompson* v. *Bernard,* 1 *Campb.* 48. *Williams* v. *Stott,* 1 *Cr. & Mee.* 675. *Jackson* v. *Adams,* 2 *Bing. N. C.* 402. (29 *E. C. L.* 371.) *Van Rensselear* v. *Dole,* 1 *Johns. Ca.* 279. *Dexter* v. *Taber,* 12 *Johns. R.* 239. *Bloss* v. *Tobey,* 2 *Pick.* 320.

3. That the deposition of Mrs. *Dow* and the testimony of *Gates,* going to prove that the plaintiff, while in the joint occupancy of Mrs. *Dow's* farm and barn, had wrongfully and without license, taken *her* hay, and foddered it out to *his* animals, ought to have been received, to repel malice and mitigate damages ; the testimony of both tending to show, that the defendant had good reason to believe the truth of her charge, thus bringing this case within a well known rule of law, that in actions for slander, the defendant, on the plea of the general issue, may prove, in mitigation of damages, all acts and circumstances that furnish ground of suspicion, not amounting to proof of the plaintiff's guilt. 2 *Stark. Sland.* 96 to 99. 2 *Greenl. Ev.* 344. *Knobell* v. *Fuller, Peake's Ev.* 287,8. append. *xcii. Mullett* v. *Hulton,* 4 *Esp. R.* 248.

New-London,
July, 1847.

Williams
v.
Miner.

*Earl of Leicester* v. *Walter,* 2 *Campb.* 251. —— v. *Moore,* 1 *Mau. & Selw.* 285.    *Newton* v. *Rowe* & al. 1 *Car. & Kir.* 616. (47 *E. C. L.* 616.)    *East* v. *Chapman,* 1 *Moo. & Mal.* 46. (22 *E. C. L.* 244.)    *Saunders* v. *Mills,* 6 *Bing.* 213. (19 *E. C. L.* 60.)    *Chalmers* v. *Shackell,* 6 *Car. & Pa.* 475. (25 *E. C. L.* 496.)    *Charlton* v. *Watton, Id.* 385. (25 *E. C. L.* 450.)    *Morris* v. *Duane,* 1 *Binn.* 90. *n.*    *Williams* & *ux.* v. *Mayer* & *ux.* 1 *Binn.* 92. *n.*    *Middleton* & *ux.* v. *Callaway,* 2 *A. K. Marsh. R.* 372.    *Buford* v. *Mc Luny,* 1 *Nott* & *McCord,* 268.    *Wilson* v. *Apple,* 3 *Ham. R.* 270.    *Root* v. *King,* 7 *Cowen* 613.    *Mapes* v. *Weeks,* 4 *Wend.* 659.    *Gilman* v. *Lowell,* 8 *Wend.* 573. 581.    *Stone* v. *Varney,* 7 *Law Rep.* 533.    *Hyde* v. *Bailey,* 3 *Conn. R.* 463. 466.    *Treat* v. *Browning* & *ux.* 4 *Conn. R.* 408. 414. Upon no principle of law, can this testimony be rejected, where the defendant disclaims all intention to prove the truth of the charge, and offers the evidence solely to give character to the malice which the law implies from the falsity of the charge, and where this intention is shown by the plea of the defendant. 2 *Stark. Sland.* 97.    2 *Greenl. Ev.* 344.

4. That the testimony of *Betsey Walden* and *Bogue* should not have been received, to sustain the allegations in either count in the declaration as to speaking the alleged slanderous words; there being a material variance between the language set forth in the declaration and that testified to by these witnesses; and the rule being, that slanderous words should be stated as they were uttered. *Leigh's N. P.* 1384.    2 *Stark. Sland.* 369–383. *Bul. N. P.* 5.    *The Queen* v. *Drake,* 3 *Salk.* 224.    *The King* v. *Berry,* 4 *Term R.* 217.    *Tabart* v. *Tipper,* 1 *Campb.* 350.    *Stannard* v. *Harper,* 5 *Man. & Ry.* 295.    *Flower* v. *Pedley,* 2 *Esp. R.* 491.    *Bell* v. *Byrne,* 13 *East,* 554.    *Barnes* v. *Halloway,* 8 *Term R.* 150.    *Bromage & al.* v. *Prosser,* 4 *B. & Cres.* 247. (10 *E. C. L.* 321.) *Hancock* v. *Winter,* 7 *Taun.* 205. *S. C.* 2 *Marsh.* 502. *Watters* v. *Meace,* 2 *B. & Ald.* 756.    *Cook* v. *Smith, McCl. & L.* 250.    *Lewis* v. *Few,* 5 *Johns. R.* 1.    *Miller* v. *Miller,* 8 *Johns. R.* 74.    *McConnel* v. *McCoy,* 7 *S. & R.* 223.    And see the cases cited, 2 *Sup. U. S. Dig.* 335.

*Foster* and *E. Learned* jun., contra, contended, 1. That the words alleged to have been spoken by the defendant,

*New-London,*
*July,* 1847.

Williams
*v.*
Miner.

were sufficiently proved. The words, as alleged in the first count, were "He is a thief." These words are proved, by the deposition of *Betsey Walden.* The words, as alleged in the second count, were, " He is a thief, and stole hay and hay-seed from Mrs. *Dow's* barn." These words were proved, by the testimony of *Russell Bogue.* These witnesses prove all that is ever necessary to be proved. *Purple* v. *Horton,* 13 *Wend.* 9. *Fox* v. *Vanderbeck,* 5 *Cowen,* 513. *Clark* v. *Munsell,* 6 *Metc.* 373. *Treat* v. *Browning & ux.* 4 *Conn. R.* 408. 414. *Miller* v. *Miller,* 8 *Johns. R.* 74. *Whiting* v. *Smith,* 13 *Pick.* 364. *Nichols* v. *Hayes,* 13 *Conn. R.* 155. 2 *U. S. Dig.* 786. *pl.* 480,81. The rule on this subject has been very much relaxed, by recent decisions, and justly so.

2. That the testimony of *Champlin, Congdon,* and *Asa Walden,* to prove the repetition of the same slander, at different times, was admissible to show malice. *Rustell* v. *Macquister,* 1 *Campb.* 49. *n.* *Warne* v. *Chadwell,* 2 *Stark. Ca.* 457. *Bodwell* v. *Swan & ux.* 3 *Pick.* 376.

3 That the testimony of *Bogue, Gates* and Mrs. *Dow,* offered by the defendant, to prove that the hay and hay-seed said to have been stolen, were in fact the joint property of Mrs. *Dow* and the plaintiff, was inadmissible, under the general issue without notice. *Waithman* v. *Weaver & al.* Dow. & Ry. N. P. 10. (16 E. C. L. 412.) *Vessey* v. *Pike,* 3 *Car. & Pa.* 512. (14 E. C. L. 420.) *Wormouth & ux.* v. *Cramer,* 3 *Wend.* 395. *Laine* v. *Wells,* 7 *Wend.* 175. *Purple* v. *Horton,* 13 *Wend.* 9. *Carter* v. *Andrews,* 16 *Pick.* 1. *Brickett* v. *Davis,* 21 *Pick.* 404.

But further, this evidence, as spread upon the motion, if admitted, would not help the defendant. The hay was not in point of fact the joint property of the plaintiff and Mrs. *Dow.*

Again; if the fact were as claimed by the defendant, it does not appear that she knew of it, at the time she uttered the slander. She did not state it, or allude to it, to qualify or mitigate the charge. She asks now too much, when she asks that this newly discovered fact may be received, to mitigate, not the slander, but the damages.

4. That the evidence offered by the defendant, to show, that when she spoke the slanderous words, she had good rea-

son to believe them true, was properly rejected.  *Bodwell* v. *Swan,* 3 *Pick.* 376.  *Root* v. *King,* 7 *Cowen* 629.  *Mapes* v. *Weeks,* 4 *Wend.* 659.  *Gilman* v. *Lowell,* 8 *Wend.* 573.  *Purple* v. *Horton,* 13 *Wend.* 9.

CHURCH, Ch. J.  In this declaration there are but two counts, and in both of them the defendant is charged with saying of the plaintiff, that he was a thief.  In the second count, it is further alleged, that the plaintiff had stolen hay and hay-seed from Mrs. *Dow.*  The speaking of these words was proved, at two several conversations; and then the plaintiff offered further proof of three subsequent conversations, in each of which the defendant had made, in substance, a charge of the same import.  This was objected to, by the defendant.

As additional grounds of recovery, these after-spoken slanderous words were not proveable; and so the judge at the circuit ruled; but he properly admitted them to show the spirit of the defendant in speaking the words already proved—that it was malicious and vindictive.

There has been a strange confusion in the adjudged cases on this subject.  If the last words did not in terms refer to the first, they referred to the same transaction, and repeated the charge of the same crime: they were in effect a repetition of the same slander; showing that the same motives which induced the original defamation, were still continued and cherished.

A review of all the cases on this subject, which have fallen under our notice, persuades us, that where the subsequent words impute the same crime, or may be fairly considered as equivalent to a renewal or repetition of the same defamatory charge as those already proved, they may be admitted as legitimate evidence of the original malice of the speaker; but not as separate grounds of action where there is no additional count to embrace them.  And we think the doctrine thus limited, was recognized by this court, in the case of *Mix* v. *Woodward,* 12 *Conn. R.* 262. cited on the other side.  See also *Lee* v. *Huson, Peake's Ca.* 166.  *Rustell* v. *Macquister,* 1 *Campb.* 49. *n.*  *Finnerty* v. *Tipper,* 2 *Campb.* 72.  *Macleod* v. *Wakley,* 3 *Car. & Pa.* 311. (14 *E. C. L.* 322.)  *Defries* v. *Davis,* 7 *Car. & Pa.* 112. (32 *E. C. L.* 460.)

*Symmonds* v. *Blake,* 1 *Moo.* & *Rob.* 477.　　*Bodwell* v. *Swan,*
& ux. 376.　　*Pearce* v. *Ormsby,* 1 *Moo.* & *Rob.* 455.　　*Wal-*
*lis* v. *Mease,* 3 *Binn.* 546.　　*Kean* v. *McLaughlin,* 2 *Serg.*
& *Raw.* 469.　　*Rosc. Ev.* 293.　　2 *Stark. Slan.* 56.　　1 *Sw.*
*Dig.* 488.　　*Stephens N. P.* 2577.

2. The defendant offered to prove, that the hay &c. re-
ferred to by her, as the subject of the theft imputed, was the
joint property of the plaintiff and Mrs. *Dow,* whose tenant
he was, so that, in legal effect, no such crime was committed,
and could not have been, as the language used would seem to
import; and that the plaintiff, therefore, was not subjected to
any danger of prosecution for the crime of theft. This evi-
dence was properly rejected.

If one uses language apparently slanderous, but, at the
same time, in the hearing of the same persons, refers to facts
and circumstances, which show, that no charge of crime was
intended, but only some act, which, though it may even be
censurable, the law does not regard as criminal ; such facts
may be proved as giving the true import of the conversation,
and as it was, or ought to have been, understood, by the hear-
ers. But such was not the evidence offered in the present
case.

When these words were spoken, no allusion was made to
any joint ownership of the property stolen ; nor did it appear
even, that the defendant knew or believed, such to be its con-
dition ; or that the persons addressed knew any thing on the
subject. The charge was unequivocally a charge of theft—
so intended and so received. And if it should afterwards
appear, that the plaintiff was a joint owner of the property,
and so could not have stolen it, this circumstance could not
detract aught from the falsehood or malice of the defendant ;
nor give to her language a harmless meaning ; nor allay, in
any wise, the injury sustained by the plaintiff. *Carter* v.
*Andrews,* 16 *Pick.* 1.　　*Stone* v. *Clark,* 21 *Pick.* 51.　　*Phil-*
*lips* v. *Barber,* 7 *Wend.* 439.　　*Tempest* v. *Chambers,* 1 *Stark.*
*Ca.* 67.　　*Power* v. *Price,* 16 *Wend.* 450.　　*Kennedy* v. *Gif-*
*ford,* 19 *Wend.* 296.　　*Tomlinson* v. *Brittlebank,* 4 *B.* &
*Adol.* 628.　　(24 *E. C. L.* 128.)

3. The defendant also claimed, that the testimony of *Bet-*
*sey Walden* and *Russell Bogue* did not sustain the allegations

*New-London,*
July, 1847.

Williams
*v.*
Miner.

descriptive of the words spoken in either count in the declaration.

The testimony of both these witnesses proves, very distinctly, a charge of theft—the stealing of hay and hay-seed from Mrs. *Dow.* And although their testimony is more amplified and circumstantial than the pleadings, it is not variant from them ; but, on the contrary, proves essentially, and in some particulars, almost literally, the averments in the declaration. The law does not require literal proof of the words as given in the declaration, but only proof of words of the same sense and import. The witness will not be permitted to give merely his construction of the language used, or the impression which the conversation made upon his mind, without giving the conversation itself. He must state the language used in its connexion with the subject of the conversation, as near as he can recollect it ; and if this does not differ, in its essential meaning, from the words alleged in the declaration, though it may in the forms of expression, it will sufficiently support the averment. There is nothing more difficult than for a witness to recollect the exact language used by another ; and to require this, would be to defeat recoveries in actions for verbal slander, in almost every instance. All rules of law should be such as may have a convenient practical effect. *Miller* v. *Miller*, 8 *Johns. R.* 74. *Kennedy* v. *Lowry*, 1 *Binn.* 393. *Nye* v. *Otis*, 8 *Mass. R.* 122. *Treat* v. *Browning* & ux. 4 *Conn. R.* 408. *Nichols* v. *Hayes*, 13 *Conn. R.* 156. The judge in the court below was therefore justified, in our opinion, in refusing to charge the jury, in this respect, as the defendant claimed.

4. There is, however, another question in this case, which is not free from difficulties, and has been so regarded by other courts before now. It grows out of the rejection of the deposition of Mrs. *Dow.*

It will be seen, that in this case, the defendant made no attempt at justification, either by plea or notice, which distinguishes the present from some of the cases cited in the argument ; but for the purpose of disproving malice, and upon the question of damages, to show that she had, when speaking the words, reasonable ground to believe them to be true, she offered this deposition in evidence, which was rejected by the judge.

The facts claimed to be proved by Mrs. *Dow's* deposition, *New-London,* *July, 1847.* were, that the plaintiff took and converted to his own use the hay and hay-seed of Mrs. *Dow,* without her knowledge and against her consent. This evidence, although it would conduce to prove the truth of the charge of theft, yet unconnected with other circumstances, might, and, as we think, did, fall short of it. The *animus furandi* was wanting. The facts offered in evidence did not sufficiently prove the felonious intent; nor did the defendant claim it. And yet they did prove, that the property was taken under such circumstances as might and probably did excite reasonable suspicions of guilt, and such as by persons not legally informed, are often supposed to constitute the crime of theft. These facts, the defendant wished to prove. The judge at the circuit, controuled, as he supposed, by opposing authority, rejected the proof of them—not because, in the absence of any plea or notice of justification, they established the truth of the charge of theft, but because they tended to that result, though offered for an entirely different purpose. The correctness of this opinion will be examined briefly.

*Williams*
*v.*
*Miner.*

The question is, as it seems to us, if the defendant used the language imputed to her from a knowledge that the plaintiff had taken the property of Mrs. *Dow,* in the manner stated, without her knowledge and against her consent, and converted it to his own use, whether she should be subjected to the same extent of damages, as if her charge had been an entire fabrication, and made without reasonable ground for believing it to be true? Why, upon general principles, was not this evidence admissible?

In most actions for torts, as in trespass, assault and battery, false imprisonment, &c. as well as in actions on the case, questions of intention and motive are important as affecting the measure of damages. And they are equally so, in actions of slander; and have always been so considered. But it is said, that there are certain rules of pleading and evidence known to the common law, which, in cases like the present, will exclude the application of this salutary principle of justice. We recognize and submit to the rule referred to, that the truth of a slanderous charge, either written or spoken, cannot be proved and relied upon, in any action for the defamation of character, either in justification, or in miti-

gation of damages, unless the truth of the words has been specially pleaded, or notice of justification has been given. To this extent the rule has been slowly and reluctantly brought ; but we know of no adjudged case or principle recognized by the courts of this state, which has confined a defendant within more narrow limits. And our opinion in the present case, is not in conflict with this principle.

The defendant here did not offer to justify her charge of theft as a defence, or to prove its truth for any purpose. She admitted her mistake ; and only offered to prove facts falling short of the accusation, and reasonably conducing to show, that she spoke the words *bona fide*, or without that degree of malice, which otherwise the law might presume against her, and only for the purpose of mitigating damages.

That these are mitigating circumstances, we do not believe will be denied. They have been recognized as such, in many cases. In the case of *Sims* v. *Kinder*, 1 *Car. & Pa.* 279. (11 *E. C. L.* 393.) *Best*, C. J. says, " I am clearly of opinion, that any fact which goes to show that the defendant spoke *bona fide*, and without malice, is admissible in evidence ; and further, that it is admissible on the general issue." And in *Knobel* v. *Fuller, Peake's Ev.* 287. the same judge held, that the defendant, on the general issue, may prove in mitigation of damages such facts and circumstances as show a ground of suspicion not amounting to actual proof of guilt. The same principle is recognized, in *Earl of Leicester* v. *Walter*, 2 *Campb.* 251. and in ———— v. *Moore*, 1 *M. & S.* 284. In *Root* v. *King*, 7 *Cowen* 633. the court says, the defendant may show in evidence, by way of excuse, any thing short of a justification, which does not *necessarily* imply the truth of the charge, or tend to prove it true, but which repels the presumption of malice. And the same court, in *Gilman* v. *Lowell*, 8 *Wend.* 573. reaffirms the justice of the principle, by saying, that a defendant in an action for words, has two courses before him of shaping his defence. The one is, to justify ; the other is, to show his innocence, either by a total denial, or by showing circumstances which prove his motives to have been innocent. We refer also to *Alderman* v. *French*, 1 *Pick.* 1. *Saunders* v. *Mills*, 6 *Bing.* 213. (19 *E. C. L.* 60.) *Chalmers* v. *Shackell*, 6 *Car. & Pa.* 475.

(25 *E. C. L.* 496.) in corroboration of the principle we have stated.

But nowhere has it been more distinctly advanced, than by this court, in the cases of *Hyde* v. *Bailey*, 3 *Conn. R.* 463. and *Treat* v. *Browning*, 4 *Conn. R.* 409. In the first of these cases, the court says, " It is equally indisputable, that evidence which falls short of a justification, may be competent to mitigate damages; and that the defendant, on the general issue, may prove, in mitigation of damages, such facts and circumstances as show a ground of suspicion not amounting to actual proof of the guilt of the plaintiff. So if any facts exist, which tend to diminish the presumption of malice, they are competent proof." Indeed, that a defendant ought in some way to be permitted to avail himself of such mitigating circumstances, is not denied anywhere.

But the claim of the plaintiff is, and he is certainly sustained in this, by several *American* cases, and by some to which we have referred as recognizing the general principle stated, that if the facts relied upon to diminish the presumption of malice, tend, in any measure, towards proving the truth of the charge, they cannot be proved under the general issue. This distinction is certainly a nice one; and if not founded in good sense and obvious necessity, and upon some principle from which it would be dangerous to depart, it ought not to be adopted by us. Unnecessary distinctions should be avoided : they tend only to perplex the administration of justice.

It is quite obvious, we think, that, if the *mitigating* facts objected to, cannot be proved under the general issue, they cannot be proved at all; and a defendant, in such case, must be deprived of his essential rights, without relief. As they do not constitute a full defence or justification, they cannot be pleaded specially as a defence. They cannot be pleaded in mitigation of damages; for facts affecting the damages merely, and not constituting a defence, can never be specially pleaded. It is intimated, in some of the cases relied upon by the plaintiff, that if the defendant would avail himself of such mitigating circumstances as tend to prove the truth of the charge, he must plead the truth in justification, and then, though he fails of establishing it as a defence, he may have the benefit of these facts in mitigation. But a defendant ought not to be compelled to plead a falsehood, in order to

*New-London,
July, 1847.*

Williams
*v.*
Miner.

avail himself of a truth. Such is not the morality of our law. And it should be remembered also, that it is said in some cases, that if the defendant fail to support his plea of justification, he shall be punished by aggravated damages, even if he has honestly made the attempt!

We are not satisfied, that a defendant should be deprived of the benefit of mitigating circumstances, for no better reason, than that they conduce to prove the truth of the charge, while they fall short of it. We see no sufficient cause why he should not be permitted to prove such facts, as well as any other, showing innocency of motive, and which can only be proved under the general issue. Our convictions on this subject are sustained, by the cases in this court, and in the *English* courts before cited, as well as by several in our sister states, and in which the distinction aforesaid has not been recognized, but the general principle has been permitted to prevail. 3 *Stephens N. P.* 2579. 2 *Starkie on Slander,* 95. *in notis. Williams* & ux. v. *Mayer* & ux. 1 *Binn.* 92. *in notis. Middleton* & ux. v. *Calloway,* 2 *A. K. Marshall's R.* 372. *Buford* v. *McLuny,* 1 *Nott & McCord* 268. *Beehler* v. *Steever,* 2 *Wharton* 313. *Wilson* v. *Apple,* 3 *Ham.* 270. *Regden* v. *Wolcott,* 6 *Gill & Johns.* 413. *Henson* v. *Veach,* 1 *Blackford* 369.

Suppose one is sued in slander, for saying of a mercantile house in the city of *New-York,* that it had failed and become bankrupt; is it not necessary to the ends of justice, that the defendant in such an action be permitted to prove, that the plaintiff's bills had been returned protested and were not redeemed,—that his doors were closed, and his business suspended—in the honest belief of which he had spoken the words; although the affair had turned out to be a mere temporary suspension, and not a failure? And yet, all these facts upon which the defendant's *bona fide* opinion was founded, conduced to prove the truth of the words spoken.

That courts of the highest respectability and authority in this country, have thought differently from us on this subject, we know. We feel the weight of their opinions, while we remain unconvinced by their reasons. These reasons are given by *Parker,* C. J., in the case of *Bodwell* v. *Swan,* 3 *Pick.* 376. and by the supreme court of the state of *New-York,* in *Root* v. *King,* 7 *Cowen* 629. *Mapes* v. *Weeks,* 4

*Wend.* 659.   *Gilman* v. *Lowell*, 8 *Wend.* 573.   *Purple* v.
*Horton*, 13 *Wend.* 9.   These reasons are, first, that such
evidence would answer all the purposes of the defendant,
without exposing him to the just consequences of attempting
to justify, and failing in the attempt: and secondly, that the
notice to the plaintiff of what is intended to be proved, would
be withholden.   Neither of these reasons, we think, have any
force, when applied to a case like the present, in which the
truth of the words spoken was not attempted to be proved,
for any purpose.   The reasons apply only to cases, where
the object is, or where the effect would be, to avoid a justifi-
cation upon the record, while the same result is attempted
in a collateral way.   Nothing of that character appears here.

In regard to the first reason assigned.   This is predicated,
we suppose, upon a principle sometimes advanced in actions
for defamation of character, and which we do not intend
now to deny ; that, if a defendant pleads the truth of the
words specially in his defence, and fails to prove it, this is an
aggravation of his offence, which calls for aggravated dama-
ges against him !   We shall not discuss the propriety of this
doctrine ; but we may say, if it be defensible, that we do not
consider it of such an essential character as to justify us in
sacrificing more important principles for its protection.   Nor
do we think the second reason assigned, sufficient to justify
the doctrine advanced.   It is, that if the evidence offered by
the defendant may be admitted under the general issue, the
plaintiff would not have notice of what the defendant intend-
ed to prove.   Now, it certainly would be very desirable, if,
in all cases, litigant parties should be timely advised of the
course intended to be pursued, by their adversaries.   And
many of the rules of pleading and practice were established
to promote this purpose.   But, where the question is one of
damages merely, and not of defence, it is not known, that
any principle of the common law has hitherto required any
such notice.   Nor do we see any good reason for distinguish-
ing the privileges of plaintiffs in actions of slander, from the
rights of parties in other actions, in this particular.   If there be
any inconveniences peculiar to this action in this respect, the
most appropriate remedy will be found in some rule of court
adapted to the case.

Another reason has been suggested, in some of the books,

*New-London,*
*July, 1847.*

Williams
*v.*
Miner.

which is, that it might be difficult to draw the line, and restrain the evidence of facts tending to throw suspicion on the plaintiff within such limits that it should not produce actual conviction in the minds of the jury. We cannot anticipate such a difficulty as of frequent, or hardly as of possible occurrence, in a case like this, where there is neither plea nor notice of justification. It would be presuming too much upon the credulity of a jury, to suppose they would believe a fact to be either proved or true, which the defendant did not claim to be true, and which, by the record, he has disclaimed the right of proving.

It is not our purpose to review the cases relied upon by the plaintiff, to sustain his objection to the testimony offered : we only say, that the prominent reasons for the opinions advanced, are not such as to induce us, now for the first time, to incorporate into our law the principle for which the plaintiff here contends. And we think that the facts offered to be proved, by the deposition of Mrs. *Dow*, should have been admitted, to affect the question of damages in the case, although they had a tendency to prove the truth of the charge.

And for this reason alone, we advise a new trial.

In this opinion the other Judges concurred.

New trial to be granted.