## EDWIN GRIBBLE vs. PIONEER PRESS COMPANY.

### December 8, 1885.

**Libel—Definition of "Shyster."**—The word "shyster," in its proper definition, may appropriately have reference to the professional character and standing of a lawyer. Hence, in an action for libelling one, as respects his character as a lawyer, by the use of the word "shyster," an issue made as to whether plaintiff is a lawyer or not is material.

**Same—Malice—Other Publications.**—In an action for publishing a libel upon a plaintiff, evidence of other publications by defendant containing substantially the same imputation as that sued upon, whether made before or after the latter, or even after suit brought upon it, may be admitted in evidence for the purpose of proving actual malice in the publication prosecuted for, and thereby aggravating the damages recoverable therefor.

Action for libel. The publication complained of was printed and published on August 17, 1882, in the St. Paul Daily Pioneer-Press, and was as follows: "For it presented no evidence in support of its malicious charges except a statement by a half-imbecile shyster, who is the butt of the town, of his feeble-minded suspicions, indorsed by another fool in full regimentals, who is the laughing-stock of the state, and who, without knowing anything about it, appended to Gribble's idiotic drivel his official signature."

Upon the trial before *Wilkin*, J., and a jury, in the district court for Ramsey county, the court admitted in evidence, against defendant's objection, proof that plaintiff had been admitted to practice as

an attorney, and also two other publications in defendant's newspaper, referring to plaintiff. Plaintiff had a verdict for $1,000, and defendant appeals from an order refusing a new trial.

*W. D. Cornish,* for appellant.

*J. B. Brisbin* and *E. Gribble,* for respondent.

BERRY, J. It is alleged in the complaint that the plaintiff is, and for more than 10 years has been, a practising attorney and counsellor-at-law in this state, and that defendant, with intent to injure him in his good name and in his said profession, published of and, concerning him a false and malicious libel, (set out in the complaint,) charging him, among other things, with being a "shyster;" thereby charging and meaning to be understood that plaintiff "was guilty of dishonest practices in the practice of his profession." The answer generally and specifically denies that plaintiff is or ever has been an attorney-at-law, and expressly avers that his general reputation for ability and "professional standing" is "properly described" in the alleged libel.

The word "shyster"—defined in Webster to mean "a trickish knave," "one who carries on any business, especially a legal business, in a dishonest way"—is evidently capable of having reference to the professional character and standing of a lawyer. *Bailey* v. *Kalamazoo P. Co.,* 40 Mich. 251. The issue made in the pleadings as to whether the plaintiff was a lawyer was therefore material, and hence evidence to show that he was a lawyer was in point.

The libel which is the subject of this action was published August 17, 1882. For the purpose of showing actual malice, the plaintiff introduced, over defendant's exception, two articles published by defendant, one May 28, 1876, the other August 24, 1882, in both of which plaintiff's professional character is assailed, and in both of which he is called, directly or by intimation, a "shyster." The trial court was of opinion that this evidence was admissible solely for the purpose, by proving actual malice, of thereby aggravating the damages recoverable for the libel set up in the complaint, and so instructed the jury; especially cautioning them against giving *damages* for the libels (if any there were) contained in the two publications thus introduced in evidence. While there is some contrariety of

opinion on the subject, the very great weight of authority, both in this country and England, is with the ruling of the learned trial judge. It is true, as was properly charged, that the words used in the libel sued for are actionable *per se*, as sounding, in the phrase of Lord Holt, "to the disreputation of the person" of whom they were spoken. And hence the law implies malice, and it was therefore unnecessary to prove actual malice merely to make out a cause of action. But for the purpose of showing the *animus*, or, as it is sometimes called, "the intention and spirit," of the publication sued for, and thereby enhancing the exemplary damages allowable in actions of this character, evidence of actual malice is admissible, according to all the authorities, and for the most obvious reasons. 1 Am. Lead. Cas. 195, 196. To prove such actual malice, other publications by the defendant, containing substantially the same imputation as that sued upon, whether made before or after the latter, or after suit brought upon it, are competent and admissible in evidence. This rule is sanctioned by courts of the highest repute, and by some of them in even broader terms.

In *Barrett* v. *Long*, 3 H. L. Cas. 395, an action for a libel published in a newspaper August 19, 1844, it was held, sustaining a judgment of the exchequer chamber affirming one of the common pleas, that numbers of the paper published January 27, 1834, March 27 and May 11 and 27, 1835, and July 3 and 21, 1837, were admissible to show actual malice in publishing the libel sued on. The *last* of these publications was made, as will be observed, more than seven years before that upon which suit was brought. "The circumstance," says Baron Parke, "that the other libels are more or less frequent or more or less remote, * * * merely affects the weight, not the admissibility, of the evidence." In *Pearson* v. *Lemaitre*, 5 Man. & G. 700, the action was for a libel (by letter) published November 13, 1841. A letter of May 27, 1842, and another of January 25, 1843, both written *after the commencement of the action*, were received in evidence (per Tindal, C. J.) as showing the intention and spirit of the party, as they contained repetitions of the libel, and clearly related to the same subject. Of like effect are *Symonds* v. *Carter*, 32 N. H. 458; *Wallis* v. *Mease*, 3 Bin. 546; *Kean* v. *McLaughlin*, 2 Serg. & R. 469; *Barr* v. *Moore*, 87 Pa. St. 385; *Bodwell* v. *Swan*, 3 Pick. 376; *Bald-*

*win* v. *Soule,* 6 Gray, 321; *Fowler* v. *Gilbert,* 38 Mich. 292; *True* v. *Plumley,* 36 Me. 466; *Stowell* v. *Beagle,* 79 Ill. 525; *Ward* v. *Dick,* 47 Conn. 300; *Williams* v. *Miner,* 18 Conn. 464; Townshend, Sland. & Lib. 392–396; Odgers, Sland. & Lib. 271, and note.

The rule mentioned has been severely criticised as illogical and anomalous, but it is not only maintained by adjudications of the highest authority, but, while it may run against some technical rules of pleading and evidence, we take it to be so maintained not arbitrarily, or as a mere matter of precedent, but because it rests upon a common-sense judgment of human nature, and a practical knowledge of *its* motives and its ways. The fact that a given libel has been preceded and followed by others of like tenor from the same source is one from which, as men are constituted, a legitimate inference may be drawn as to the *animus*—the spirit—with which the given libel was published. It has a fair tendency to show that the given libel was not published by accident or mistake, or even under a sudden impulse, or heedlessly, but by design, and with a deliberate purpose to injure and to persecute the person libelled. It is a *practice* of libelling such person which, as remarked in *Barrett* v. *Long, supra,* "may show in the most satisfactory manner that the defendant was actuated by actual malice." In our opinion, then, as before said, the two publications were properly admitted; their effect being confined to showing actual malice in publishing the libel prosecuted for, and the jury being instructed accordingly.

This disposes of the substance of the appellant's contention here, and the result is that the order denying a new trial is affirmed.