### SUMNER *against* UTLEY.

Words spoken falsely and maliciously of a man, in reference to his profession,
  imputing to him want of skill and good management in his treatment of a
  particular case, are actionable, without proof of special damage, if, from the
  nature of the calumny, damage may be inferred as the natural and probable
  consequence of its publication.
Therefore, where the defendant falsely and maliciously spoke of the plaintiff,
  in his profession of a physician, in reference to the case of a woman, whom
  he had assisted in parturition, and who had been delivered of twins, and
  soon afterwards the mother and both her offspring died, the following words:
  " He has killed three, and ought to be hung ; damn him. They all died
  through his mismanagement. I have understood he left the after-birth ;
  and a man that would do *that*, ought to be hung." And where the de-
  fendant, on another occasion, addressing himself to Mrs. *H.*, who had em-
  ployed the plaintiff as her physician, falsely and maliciously said of him :

*New-London,*
*July, 1828.*

Sumner
*v.*
Utley.

" He was the means of your sickness, by cutting an artery in your head. Damn him; you ought n t to pay him a cent. If Mr. *H.* had took him up for it, it would have cost him 400 dollars. It ought to be 'put in the newspaper." It was held, that the jury were authorized to infer damage to the plaintiff in his profession, as the natural and probable consequence of such words; and consequently, that the plaintiff was entitled to recover, without proof of special damage.

THIS was an action of slander, tried at *Norwich, January* term, 1828, before *Lanman,* J.

In his declaration the plaintiff averred, that the defendant falsely and maliciously spoke of and concerning him, in his profession of a physician, the following words : " He has killed three, and ought to be hung; damn him. They all died through his mismanagement. I have understood he left the after-birth ; and a man that would do *that,* ought to be hung." These words, the plaintiff averred, were uttered, by the defendant, in relation to his, the plaintiff's treatment of *Phebe Johnson* and her twin children, in the capacity of an accoucheur. One of the children was dead at its birth ; the other died about two days afterwards ; and the mother about a fortnight afterwards. The declaration also alleged, that the defendant uttered the following words concerning the plaintiff, addressed to a Mrs. *Haynes,* who had employed the plaintiff as her physician : " He was the means of your sickness, by cutting an artery in your head. Damn him ; you ought not to pay him a cent. If Mr. *Haynes* had took him up for it, it would have cost him 400 dollars. It ought to be put in the newspaper." To each set of words was subjoined an *innuendo,* that the defendant meant to charge the plaintiff with having conducted in his profession ignorantly and unskilfully.

The defendant contended, and prayed the court to instruct the jury, that unless they should find, from the evidence before them, that the defendant intended to impute to the plaintiff a felonious homicide or intentional mismanagement, they could not find a verdict in his favour. The judge instructed the jury, that if the words set forth in the declaration, were uttered and published as alleged, of and concerning the plaintiff, by the defendant, falsely and maliciously, with intent to prejudice him as to his skill, diligence, knowledge or good management in his profession, they ought to find the issue for the plaintiff; and that it was not necessary to such finding, that the jury should believe from the evidence before them, that the defendant in-

tended to impute to the plaintiff a felonious homicide, or inten- <span style="float:right">*New-London,*<br>July, 1828.</span>
tional mismanagement in his profession.

The jury returned a verdict for the plaintiff, with 600 dollars <span style="float:right">Sumner<br>*v.*<br>Utley.</span>
damages ; and the defendant moved for a new trial, for a mis-
direction.

*Strong* and *McCurdy*, in support of the motion, contended,
That to say of a man in reference to his profession, that there
was a want of skill or good management in his treatment of a
particular case, is not actionable without the averment and
proof of special damage. In support of this position, they cited
*Poe* v *Mondford, Cro Eliz.* 620. *Feise* v. *Linder,* 3 *Bos. &
Pull.* 372. and *Foot* v. *Brown,* 8 *Johns. Rep.* 64.

*Waite* and *Hungerford,* contra, insisted, 1. That words
falsely and maliciously spoken of a physician, reflecting upon
his skill, diligence and prudent management, in a particular
case or cases, are in themselves actionable. *Martyn* v. *Bur-
lings, Cro. Eliz.* 589. *Bac. Abr. tit.* Slander. B. *Watson* v.
*Vanderlash, Het.* 69. *Tutley* v. *Alewin,* 11 *Mod.* 221. *Smith*
v. *Taylor,* 1 *New Rep.* 196. *Stark. Sland.* 115. 100.

2. That the words found by the jury to have been spoken,
by the defendant, in this case, constitute a charge of ignorance
and want of prudent management, on the part of the plaintiff, in
his profession generally.

HOSMER, Ch. J. That words published of a physician,
falsely imputing to him general ignorance or want of skill in
his profession, are actionable in themselves, on the ground of
*presumed damage,* is unquestionable ; nor has it been question-
ed. *Stark. Sland.* 100. 110. 115. 10. 12· *Martyn* v. *Bur-
lings, Cro. Eliz.* 589. *Bac. Abr. tit.* Slander. B. *Watson* v.
*Vanderlash, Het.* 69. *Tutley* v. *Alewin,* 11 *Mod.* 221. *Smith*
v. *Taylor,* 1 *New Rep.* 196.

The only objection made rests on this proposition ; that to
say of a man in reference to his profession, that there was a
want of skill or good management in his treatment of a parti-
cular case, is not actionable without an averment of special
damage. It is, therefore, admitted, that the words are action-
able, if special damage is proved, and there is presented for
decision this single question; whether in this case damages
must be established by proof, or by law are presumable.

I am unacquainted with the general principle advanced by the defendant; nor can I find it in any elementary book of authority, or in any case. On the contrary, it is an established rule, that whenever the natural and probable effect of a false report is immediate and increasing prejudice, the slander in itself affords a strong presumption, that injury has accrued, or will accrue, to the object of it, and the law implies damages. Hence, if words are spoken of another falsely and maliciously, imputing a crime, or a contagious disorder that may exclude him from society, damage is presumed, and special damage need not be averred. *Stark. Sland.* 10. 12. 17. I readily admit, that falsehood may be spoken of a physician's practice in a particular case, ascribing to him only such a want of information and good management as is compatible with great general knowledge and skill in his profession; and that when such a case arises, unless some special damage exists, his character will be considered as unhurt, and no damages will be presumed. But, on the other hand, it is indisputably clear, that a calumnious report concerning a physician in a particular case, may imply gross ignorance and unskilfulness, and do him irreparable damage. A physician may mistake the symptoms of a patient; or may misjudge as to the nature of his disease, and even as to the powers of a medicine; and yet his error may be of that pardonable kind, that will do him no essential prejudice, because it is rather a proof of human imperfection, than of culpable ignorance or unskilfulness. On the contrary, a single act or omission of his, may evince gross ignorance, and such a deficiency of skill, as will not fail to injure his reputation, and deprive him of general confidence. If he were called on to administer to one manifestly intoxicated, and treat his disease as if it were an apoplexy, no person of good sense, after knowledge of this, would employ him in his profession. These remarks have a more striking application to the business of a surgeon or man-wife. While a physician exercises a profession often beset with great difficulties, the employment of a man-midwife and surgeon, for the most part, is merely mechanical. If a surgeon were requested to take blood from a person, and should proceed to this operation, by opening an artery instead of a vein, by reason of which he should bleed to death; or if he should amputate a limb, without having applied a tourniquet, or some other compression of the main arteries, and the person practised on should die in his hands from loss of blood: who

would afterwards employ him ?    So, if a man-midwife should deliver a woman and leave the after-birth, whatever may have been the ancient practice, would it not, in the present state of the art, exhibit such powerful proof of ignorance and want of skill, as greatly to injure his general character ?    On this subject I cannot doubt, and should not be surprised at the harsh declaration of the defendant, if applied to such an one, that " he ought to be hung."    If a surgeon should be such an arrant bungler in his profession, as not to know an artery in the head from a vein, and should puncture the former instead of the latter, would not his reputation as a man of knowledge and skill, receive essential damage ?    Undoubtedly, in all the cases put, the stigma of gross ignorance and unskilfulness would justly be applied to him ; and his character would sink under the reproach.

As a general principle, it can never be admitted, that the practice of a physician or surgeon in a particular case, may be calumniated with impunity, unless special damage is shewn. By confining the slander to particulars, a man may thus be ruined in detail    A calumniator might follow the track of the defendant, and begin, by falsely ascribing to a physician the killing of three persons by mismanagement ; and then the mistaking of an artery for a vein ; and thus might proceed to misrepresent every single case of his practice, until his reputation would be blasted beyond remedy.    Instead of murdering character by one stroke, the victim would be cut successively in pieces ; and the only difference would consist in the manner of effecting the same result.

The redress proposed on the proof of special damages, is inadequate to the case.    Much time may elapse before the fact of damage admits of any evidence ; and then the proof will always fall short of the mischief.    In the meantime the reputation of the calumniated person languishes and dies.    Hence, it is justly said, by *Starkie*, that to facilitate the remedy in slander, the law, applying itself to the urgency of the case, lays aside its usual strictness ; and where the presumption of damage is violent, but the difficulty of proving it is considerable, the law supplies the defect, and by converting presumption into proof, rescues the character of the sufferer from the misery of delay, and enables him at once to face the calumny in open court.    *Stark. Sland.* 581.

This, then, is the correct principle ; that the misrepresenta-

tion of a physician's practice, in a particular case, if it do not warrant the presumption of damage, is not actionable, unless special damages are averred and proved; but if, from the nature of the calumny, damages are inferable, the words are actionable *per se.*

The cases cited for the defendant, do not sustain the position advanced by him.

*Poe* v. Doctor *Mondford, Cro. Eliz.* 620., decided at a time when it was the rule, that words should be construed in *mitiori sensu*, is, at least of doubtful authority. *Bac. Abr. tit.* Slander. B. The matter charged was, that Dr. *Poe* had killed Mr. *Pasfield.* There was no *innuendo* and averment that a felonious killing was intended ; and if the words were of dubious import, and capable of a criminal or innocent meaning, their actionable quality, derived from explanatory circumstances extrinsic of the words, should have been made to appear by suitable averments. *Stark. Sland.* 289. In this view of the subject, perhaps, the determination was correct ; but it is entirely inapplicable to a case, which, like the one before us, is founded on words not of dubious import, but imputing extremely gross and culpable ignorance.

The same remarks, may, with equal force, be applied to *Feise* v. *Linder*, 3 *Bos. & Bull.* 372. and *Foot* v. *Brown*, 8 *Johns. Rep.* 64. The words, in both cases, were of dubious import. In the former case, which imputed to a merchant the having exhibited a false bill of lading, it was said by the court : "Though the words are capable of being construed in a bad sense, yet this declaration contains no sufficient charge to sustain a verdict" And to the latter case the observation is equally applicable. When it was observed by the court, that "the words, as laid, only go to charge the plaintiff with ignorance or want of skill in the particular ejectment suit mentioned, and that such charge is not actionable, without laying and proving special damages," it cannot be intended to lay down a general rule, of which no trace is to be found in our books. The words must be understood *secundum subjectam materiam*. In the case, the words were of dubious import ; and without the aid, by averment and *innuendo*, of any fact or circumstance extrinsic of them, to give them a character.

It is observable with respect to all the cases cited, that they differ most materially from the one before us. The imputation by them was doubtful, and as reconcileable to innocence

as to guilt	Had it been said of Doctor *Poe*, that " he killed
Mr. *Pasfield* ; damn him ; he ought to be hung ;" or of *Feise*,
that " he exhibited a false bill of lading, and the rascal ought to
be put to death ;" or of *Foot*, " he knows nothing about the
suit, and will lead you on until he has undone you, for which
he will richly merit the gallows ;" there would have been no
doubt whether the words were actionable.

The question, after all, turns on this single enquiry, whether
from the words published of the plaintiff the jury were author-
ized to imply damages, as the natural and probable conse-
quence, resulting from their publication.	If they were not, the
words are not actionable, without proof of special damage ; and
if they were, the words are actionable *per se*.

That the jury did imply damages, and large damages, the
record in the case bears testimony ; and that they were author-
ized to imply them, I have not a particle of doubt.	I think
that prejudice to the plaintiff in his profession, as the natural
and probable consequence of the words, must inevitably re-
sult.	That the defendant intended to impute to the plaintiff,
by the words spoken, the most monstrous and culpable ignor-
ance and mismanagement, it is impossible for me to doubt.
Surely, he would not have execrated him, and declared that
he ought to die an ignominious death, and that his practice
ought to be published in a newspaper, if he meant nothing
more than what the defendant would have the court suppose ;
that is, to impute to the plaintiff the common imperfections of
humanity.	On the contrary, every person of sense or reflec-
tion, who should believe the imputations cast upon him, would
consider him as a man of ignorance and unskilfulness, and un-
worthy of confidence	And this impression would be deepen-
ed, by the expression, that the plaintiff was liable to heavy
damages ; for it has often been decided, that nothing short of
gross ignorance and want of skill, will authorize a suit against a
practising physician.	*Slater* v. *Baker* & al. 2 *Wils*. 359.
*Seare* v. *Prentice*, 8 *East* 342.	What woman would trust
herself in such hands, with full information, that three persons
had perished under his culpable mismanagement ?	Or, what
person would employ as a surgeon the man, who ought to be
hung for cutting an artery ?

I would frown on every action of slander brought to gratify
a petulant and quarrelsome disposition ; but when the reputa-
tion of a skillful man is assailed, by wanton calumny, I shall

ever be disposed to go the full length of principle to afford him adequate redress.

PETERS and LANMAN, Js. were of the same opinion.

DAGGETT, J. The motion for a new trial is founded upon a supposed error of the judge in his charge to the jury.

The defendant insisted, on the trial in the court below, that if the jury did not believe that the defendant intended to impute to the plaintiff a felonious homicide, or intentional mismanagement in his profession, though the imputation made and proved were false and malicious, yet they ought not to find the defendant guilty. The judge charged in opposition to this request of the defendant; and this presents the question for consideration.

The counsel for the defendant, contend, that to charge a physician or surgeon with mismanagement in his treatment of a particular case, is not actionable without an averment of special damage,—though false and malicious. Such a charge imputes neither crime, nor such professional ignorance as will sustain an action. The most skillful practitioner may mistake the disease, apply improper remedies, and even destroy life, by mismanagement, and yet be wholly innocent. They therefore, insist, that in this case, the charge was erroneous, inasmuch as it substantially contravened these principles, and instructed the jury, that if the defendant did not impute either crime or intentional mismanagement, which indeed would be a crime, nor gross ignorance in his profession, still the defendant ought to be found guilty, if the charge was false and malicious. In support of these positions taken by the defendant, the cases of *Poe* v. *Dr Mondford, Cro. Eliz.* 620. *Feise* v. *Linder,* 3 *Bos. & Pull.* 372. and *Foot* v. *Brown,* 8 *Johns. Rep.* 64. are cited and relied on.

The words spoken by the defendant were indeed very offensive; and they are to be taken, within the rule laid down by the judge, to have been false and malicious. A case, then, is presented well calculated to excite a just indignation against the defendant; but still is he within the limits authorized by law? Malignant as his heart might have been towards this plaintiff, are the words actionable, qualified as they are with the charge?

I was not able, at the trial, to resist the argument of the de-

fendant's counsel, supported by the authorities ; and my diffi- *New-London, July, 1828.*
culties are not removed, by the opinions and reasons of my
brethren. It appears to me, the distinction taken is solid, and
is based on sound principles. If the words spoken imputed to
the plaintiff crime, intentional mismanagement or gross igno-
rance in his profession, being false and malicious, then the law
implies damage, and an action is given ; otherwise, special
damage must be alleged and proved. Here is no allegation of
special damage : none then is to be presumed. In *Poe* v. *Dr.
Mondford, Cro. Eliz* 620. it was decided, that to charge a
physician with having killed a patient with physic, was not
actionable ; and the distinction between those words and where
the charge was, that he did it knowingly and voluntarily, was
taken. The same doctrine was recognized, by the whole court
of *Common Pleas*, in *Fiese* v. *Linder*, 3 *Bos. & Pull.* 372.
The words were, " he has brought a forged bill of lading for
half the cargo already." They were holden, after verdict,
not actionable, unless special damages had been sustained.
Two cases are there cited, in which it was holden not actiona-
ble to say of a man, he had lived upon *forged bonds*, or that
he had recovered 400*l.* by *forgery.* The decision in 3 *Bos. &
Pull.* was in 1803, since the doctrine has been exploded, that
words were to be taken in *mitiori sensu.*

In a case in 1813, in the supreme court of *New-York, Foot*
v. *Brown*, 8 *Johns. Rep.* 64. the same principles were adopted.
There the plaintiff, an attorney and counsellor at law, was
charged thus : " *Foot* knows nothing about the suit ; (meaning
an ejectment suit, and speaking to *Foot's* clients) and he will
lead you on until he has undone you " This declaration was
holden bad after verdict ; and the reasoning of the court is
very much in harmony with the argument of the counsel in
this case.

The counsel for the plaintiff refer to several authorities, in
support of the charge. *Martin* v. *Burlings, Cro. Eliz.* 589.
*Watson* v. *Vanderlash, Het.* 69. *Tutly* v. *Alewin*, 11 *Mod.*
221. *Smith* v. *Taylor*, 1 *New Rep.* 196. I am not satisfied,
that the position taken is supported, by any or all those authori-
ties. In relation to that in *Cro. Eliz.* the words contained a
charge of gross ignorance against the plaintiff in his profession
of an attorney : " He is the foolishest and simplest attorney
towards the law. He is a fool and an ass."

In *Tutly* v. *Alewin*, 11*Mod.* 221. an action against the defend-

*Sumner
v.
Utley.*

*New-London,* ant, an apothecary, the words were : " It is a world of blood
*July, 1828.* he has to answer for, in this town, through his ignorance : he

Sumner did kill a woman and ten children, at *Southampton* : he did kill
*v.* John Prior, at *Petersfield* ;" it was adjudged, that the action
Utley. lay. It is fairly implied in these words, that gross ignorance
was imputed to the plaintiff. " It is a world of blood he has
to answer for, in this town, *through his ignorance.*" But
again : " he has to answer *for a world of blood.*" Here, gene-
ral and indiscriminate mal-practice is ascribed to the plaintiff,
and the particular cases are cited as examples. In *Starkie on
Slander,* the above case is cited in proof of the proposition, that
words spoken of a physician importing want of skill, are action-
able. A case in *Cro. Car.* 211. (*Flower's* case,) is of the same
import : " Many have perished through his want of skill," im-
plying a want of skill, or ignorance in his profession. The
same doctrine is in *Hetley* 69. In none of these cases is the
law laid down as contained in this charge. The case cited
from 1 *New Rep.* 196. *Smith* v. *Taylor,* contains not a word
on this subject. The case turned on a totally different point.

It was, however, urged in opposition to the motion, that the
words impute to the plaintiff ignorance or mal-practice, gene-
rally, in his profession. I cannot so understand them. They
are employed only about his treatment of a pregnant woman
and her twin children, one dead at the birth, and the other
dying with its mother soon after its birth. As this idea seems
to be embraced by my brethren, and to influence their opinions,
I have looked with attention into that part of the declaration
brought into view by this motion, and it strikes me as entirely
silent, except to the plaintiff's management in the case stated ;
and not to impute any ignorance, except in the management
of this particular case.

I am thus compelled to differ from the other members of the
court, and to say, that the charge was incorrect.

BRAINARD, J. was absent.

New trial not to be granted.