D. LEONARD PRATT *vs.* PIONEER-PRESS COMPANY.

May 28, 1886.

**Excessive Damages—Reduction of Verdict by Court.**—When the trial court deems a verdict excessive, it may, in the exercise of a sound discretion, refuse a new trial, upon condition that plaintiff remit such sum as shall, in the judgment of the court, leave the recovery not excessive.

**Same—Actions of Tort.**—This may be done in actions of tort as well as on contract; following *Craig* v. *Cook*, 28 Minn. 232, (9 N. W. Rep. 712.)

**Libel—Words Actionable per Se.**—Any language concerning a person is actionable *per se*, which, from its nature, necessarily must, or naturally and presumably will, cause pecuniary damage to the person of whom it is published.

**Same—Special Damage.**—In such cases it is not necessary to allege special damages, for damage will be presumed.

**Same — False Report of Physician's Conduct on Single Occasion.**— A false report concerning a physician, although confined to his professional conduct in a single case, and although it imputed to him neither a crime nor general professional incompetency, might, nevertheless, impute such gross and reckless or inhuman disregard for the life and health of his patient, in that particular case, as necessarily, or naturally and presumably, to injure his professional reputation. Such would be a report charging a physician with culpable neglect in his professional conduct, in allowing the decomposing body of a dead infant to remain several days in the same room with the sick mother.

Appeal by defendant from an order of the district court for Hennepin county, *Lochren*, J., presiding, refusing a new trial, upon the plaintiff's consenting to reduce the verdict from $4,275 to $2,000. This was the fifth trial of the action. Decisions on former appeals will be found reported in 30 Minn. 41 and 32 Minn. 217, in the former of which will be found at length the alleged libel.

*Gordon E. Cole* and *P. M. Babcock*, for appellant.

*Thomas Kneeland* and *Boardman & Ferguson*, for respondent.

MITCHELL, J. In *Craig* v. *Cook*, 28 Minn. 232, (9 N. W. Rep. 712,) this court held that, when the trial court deems the verdict excessive, it may, in the exercise of a sound discretion, refuse a new trial

upon condition that plaintiff remit such sum as shall, in the judgment of the court, leave the recovery not excessive, and this in actions of tort as well as on contract. This is a right now very commonly exercised by trial courts, and, whatever criticisms may be made upon the logical consistency of such a rule, it works well in practice. See *Corcoran* v. *Harran*, 55 Wis. 120, (12 N. W. Rep. 468.) This disposes of appellant's first assignment of error.

2. The question propounded to Dr. Fairbairn, referred to in the second assignment of error, was clearly incompetent, if for no other reason, because it assumed facts contrary to the evidence. There was no evidence that the dead body of the child remained *in the presence* of the sick mother for the period of 36 hours after death.

3. The plaintiff testified as follows: "I went to the office of the Pioneer-Press, *and went to the man in charge of the office,* Mr. Miller. I told him that a false statement had been published in regard to me, and his answer was that he did not know me. He said they got their authority from Dr. Fairbairn; they knew him. I went back with the affidavit [of Mrs. Mankin] after that, to convince him. I did not want to bring a suit. He refused to listen to me. Did not want to have anything to do with me. He said they were threatened with libel suits every day." The defendant moved to strike out this testimony, *upon the ground that the evidence does not show that this man (Miller) had any authority from the defendant to act in the premises,* and also requested the court to instruct the jury to disregard it. The refusal of the court to grant these requests is assigned as error.

If the question, generally, of the competency of this evidence was properly before us, no reason now occurs to us, if evidence of a retraction of a libel is competent in mitigation of damages, as showing a want of actual malice, why evidence of a refusal to retract, or of a peremptory and discourteous refusal to publish or even listen to a person's vindication of himself, is not competent as tending to show actual malice. But the only objection made in the court below, and hence the only one now before us, is as to the authority of Miller to act and speak for defendant in the matter. It was admitted that this paper, called the St. Paul & *Minneapolis* Pioneer-Press, was *published*

and circulated in the cities of St. Paul and *Minneapolis.* Miller was the man in charge of the Minneapolis office. He there assumed to speak for the defendant in the premises. Plaintiff could only judge from appearances. The knowledge of the facts as to the nature and extent of Miller's authority was peculiarly in possession of defendant. It is not to be assumed that he was an interloper in the office. We think there was enough to throw upon defendant the burden of disproving his assumed authority, and to warrant the jury in finding that he was properly in charge of the office, and clothed with authority to represent the defendant. *Leslie* v. *Knickerbocker Life Ins. Co.,* 63 N. Y. 27.

4. We find no error in excluding that part of the deposition of Bartlett (the reporter who wrote the article) which states what the policeman told him. It may be conceded that a defendant may, in mitigation of damages, and to prove want of actual malice, show that he received the information from reliable sources; that he believed it to be true; and that he made the publication in good faith. As to all this the witness was allowed to testify fully. But the matter excluded was no part of the information upon which he claimed to have relied in writing the article. It was mere matter of inducement, explaining how he came to go and make an investigation. There is no suggestion that he relied at all on what the policeman told him. It was of no more importance than if he had assumed to testify how he happened to be out that night, or what conveyance he took in making his tour of investigation.

5. The only remaining assignment of error is that the verdict is not justified by the evidence. This is so general and indefinite as to be of very little service as an assignment of error. But, upon the argument, the main ground urged in favor of this point was that the article published was not actionable *per se,* and that no special damages are alleged, or were proved. When this case was here on a former appeal, (32 Minn. 217; 18 N. W. Rep. 836, and 20 N. W. Rep. 87,) we held that the words complained of impute negligence to the plaintiff in his profession as a physician, and that such words are actionable *per se,* and neither proof of special damage or actual malice is necessary; the rule being that where defamatory words are

falsely spoken or written of one in his profession, prejudice to him, and malice on the part of the defamer, are implied in law. That this article would convey to ordinary men who read it the meaning that plaintiff had been guilty of gross neglect in the performance of his professional duties, so as to endanger the health, and possibly life, of his patient, is to us very evident. At least, the language is reasonably and fairly susceptible of such a meaning, and the jury was warranted in so construing it. Whether defendant had justified by proving the truth of the charge, in its entire scope and meaning, was, under the evidence, a question for the jury. If these propositions be true, there is clearly no ground upon which we could disturb the verdict.

But defendant now, for the first time, makes the point that this article is not actionable *per se*,—that is, without alleging and proving special damages,—because it is a criticism upon plaintiff's conduct in a particular case, which attributes to him neither crime, moral delinquency, nor general incapacity or incompetency in his profession. Unfortunately, the law of libel has been obscured by a mass of technicalities and subtle refinements. When language is used concerning a person or his affairs which, from its nature, necessarily must, or presumably will, as its natural and proximate consequence, occasion him pecuniary loss, its publication *prima facie* constitutes a cause of action, and *prima facie* constitutes a wrong, without any allegation or evidence of damage other than that which is implied or presumed from the fact of publication; and this is all that is meant by the term "actionable *per se*." Therefore the real practical test, by which to determine whether special damage must be alleged and proved in order to make out a cause of action for defamation, is whether the language is such as necessarily must, or naturally and presumably will, occasion pecuniary damage to the person of whom it is spoken. Of course, it can be readily seen that a false statement might be made regarding a physician's conduct in a particular case, ascribing to him only such want of information or good management as is compatible with general skill and care in his profession, and no damage to his professional character would be presumed. The false statement might ascribe to him an error or

mistake of a kind that would not necessarily do him prejudice, because rather indicative of human imperfection than of general professional incompetency, or gross disregard of professional duty.

But, on the other hand, it is evident that a false report concerning a physician, although confined to his conduct in a particular case, and although it imputed to him neither a crime nor general professional incompetency, might, nevertheless, imply such gross ignorance, or such gross and reckless 'or inhuman disregard for the health or life of his patient, in that particular instance, as necessarily to injure his professional reputation, and hence cause him pecuniary damage. Such language is actionable without alleging special damage, because damage would be presumed as the necessary or natural effect of such a charge. Such, it seems to us, is the character of the charge contained in this article. It is more than ordinary criticism. It is not merely a charge of simple neglect or oversight. The charge is, in effect, one of gross, culpable, and almost inhuman neglect, in allowing the decomposing body of the dead infant to remain for several days in the room with the sick mother, thus evincing a reckless disregard of the life and health of the patient. The common sense of any man will tell him that the natural, and indeed necessary, effect of such a charge against a physician, if believed, would be to injure his professional reputation. If so, the language is actionable *per se*, and it is not necessary either to allege or prove special damage. See *Sumner* v. *Utley*, 7 Conn. 257.

This disposes of all appellant's points, and the result is that we have failed to discover any error on the part of the court below in denying the motion for a new trial.

Order affirmed.