## NICHOLS v. DAILY REPORTER CO.*

No. 1636. Decided November 25, 1905 (83 Pac. 573).

LIBEL — PUBLICATION — LIBEL PER SE.—Plaintiff was a typographer and a candidate for delegate to the annual convention of the National Typographical Union, when defendant published a card on one side of which were the words, "Vote for Honest Jake Bosch for Delegate," and on the other: "Explanatory. Mr. C. A. Nichols owes the Daily Reporter Co. a balance of $34.25 for printing done in 1894. Draw your own conclusions and vote for Mr. Nichols, if you think he is not able to pay this debt." *Held,* that such publication was not libelous *per se,* and the plaintiff was not entitled to recover, in the absence of proof that the publication was actuated by malice and that he had suffered actual damage.

BARTCH, C. J., dissenting.

---

* Charging one with refusal to pay debt as libel, see note, 3 L. R. A. N. S. 339.

APPEAL from District Court, Salt Lake County; S. W. Stewart, Judge.

Action by C. A. Nichols against the Daily Reporter Company. From a judgment for plaintiff for nominal damages, he appeals.

AFFIRMED.

*D. S. Truman* and *Farnsworth & Lund* for appellant.

*Henderson, Pierce, Critchlow & Barrette* for respondent.

### APPELLANT'S POINTS.

"There is a broad distinction between actions for spoken and actions for written and published words. The latter are actionable *per se* when they impute to another acts, the tendency of which is to disgrace him or to deprive him of the confidence or good will of society, or to hold him up to scorn, ridicule or contempt, or to lessen the esteem of society for him. It is not necessary that the words imputed dishonesty or immorality of any special kind or character." (*Culmer v. Canby*, 101 Fed. Rep. 195; *Pfitzminger v. Dubs*, 64 Fed. Rep. 696; *Werner v. Vogelli*, 63 Pac. 607.)

### RESPONDENT'S POINTS.

A charge of insolvency, or that indebtedness exists against him is not actionable *per se*. (*Barns v. Trundy*, 31 Me. 321.) It is not actionable *per se*, to charge another with taking advantage of the statute of limitations to avoid the payment of a debt; or charging a person with setting up a defense under the prohibitory liquor law, to avoid the payment of an honest debt. (*Hollenbeck v. Hall*, 103 Iowa 214; *Donaghue v. Gaffy*, 53 Conn. 43, 7 Atl. 552; *Homer v. Engelhardt*, 117 Mass. 539; *Urban v. Helmick*, 45 Pac. [Wash.] 747.)

STRAUP, J.

1. The appellant, plaintiff below, brought this action against the respondent to recover damages for libel. It is alleged in

the complaint that while the plaintiff was a candidate for election to an office in the Typographical Union at Salt Lake City, and also a candidate for delegate to the annual convention of the National Typographical Union to be held at Washington, D. C., the defendant printed and published a card, on one side of which were the words, "Vote for Honest Jake Bosch for Delegate," and on the other: "Explanatory. Mr. C. A. Nichols owes the Daily Reporter Co. a balance of $34.25 for printing done in 1894. Draw your own conclusions and vote for Mr. Nichols, if you think he is not able to pay this debt." It is further alleged, "meaning thereby that the plaintiff herein, although able to pay his debts and obligations, was dishonest, and was making accounts which he never paid nor intended to pay, and was wholly unfit and unworthy of credit or to be trusted to fill the position" sought by him, and to bring him "into contempt and ridicule;" that said publication was false and defamatory, and for the purpose of defeating his election; and that he was damaged "in his reputation, good repute, and credit." It is not alleged in the complaint that the publication caused his defeat or aided in so doing. No special damages are alleged or proven. The evidence shows the defendant printed and circulated about one-hundred of said cards at Salt Lake City among members of the said union, and electors at said election. As to whether the plaintiff owed the debt there was some conflict in the evidence. He denied owing it. The court, among other things, in substance, instructed the jury that the "card does not contain matter that is libelous *per se;*" that "no damage can be inferred from the mere fact that the card was published and that it was false," that before a verdict could be returned for plaintiff "it must be shown by evidence, outside of the publication, that the defendant was actuated by malice or ill will toward the plaintiff, and that he has suffered actual damage thereby." The jury returned a verdict for plaintiff for $1. He appeals.

2. It is conceded by appellant that no special damages were alleged in the complaint, and none proven at the trial. The principal point urged by him is that the alleged words were libelous *per se,* that the court erred in telling the jury otherwise, and in directing them that no damage could be inferred from the mere fact of the publication and that it was false.

3. We are of the opinion that the alleged article was not libelous *per se;* and as no special damages were averred in the complaint, and none proven at the trial, plaintiff was not entitled to a verdict. It, of course, is conceded that written derogatory or disparaging words which impute to a person the commission of a crime, or degradation of character, or which have a tendency to injuriously affect him in his office or trust, profession, trade, calling, or business, or which tend to degrade him in society, or expose him to public hatred, contempt, or ridicule, are libelous and actionable. It also is the well-recognized rule that when the words are libelous *per se,* it is not necessary to allege or prove special damages, for malice and damage are implied; but where they are not libelous *per se,* special damages must be averred and proven to warrant a recovery. The important question, therefore, is, when can it be said that the publication of an article is libelous *per se,* and does this one fall under such class? Some authorities say, whether a publication is libelous *per se* is to be determined wholly by the sense in which the same is usually understood. Others, that it is to be determined by whether the article is susceptible of but one construction, and that one of harmful meaning; that is to say if the article is susceptible of two meanings, one innocent and the other harmful, it is not libelous *per se.* Again, expressions are found in the cases that, if a colloquium or innuendo is necessary to render the language libelous, it is not *per se* libelous. Still another test, and the one which we think is the correct one, and which is supported by the greater weight of authority, is,

"When language is used concerning a person or his affairs which from its nature necessarily must, or presumably will, as its natural and proximate consequence, occasion him pecuniary loss, its publication." is libelous *per se.*  (Townshend [4 Ed.], sections 146, 147; *Fry v. McCord Bros.,* 95 Tenn. 680, 33 S. W. 568.)

"The nature of the writing must be such that the court can legally presume" that the plaintiff has been damaged.  (18 Am. & Eng. Enc. L. [2 Ed.] 916.)

"From some sort of false report the law presumes conclusively that damage has followed, and the plaintiff need neither allege nor prove it. Here the language is styled libelous *per se.* . . . Except where this presumption exists, special damages to the plaintiff's reputation

must be alleged and proved to have been the actual and natural result of the language used." (*McLoughlin* v. *Am. Cir. Loom Co.*, 125 Fed. 204, 60 C. C. A. 87.)

This principle is also recognized and well stated in *Pratt v. Pioneer Press Co.*, 35 Minn. 251, 28 N. W. 708.

Tested by these principles, can it be said that the nature and character of the language here contained in the alleged article was such as not only as a natural and proximate, but as a necessary, consequence its publication occasioned plaintiff damages? We think the article does not warrant the indulgence in such presumption. To do so the court ought to be able to see that as a necessary consequence plaintiff was damaged in some material manner. (*Foster* v. *Boue*, 38 Ill. App. 613.)

It must, of course, be conceded that the article does not charge or impute the commission of any crime or moral degradation. Nor can it fairly be said it exposed plaintiff to public hatred, or ridicule, or tended to disgrace him. It is, however, said that the words "did impute to the plaintiff dishonesty in his vocation," from which it is argued that the article is libelous *per se*. We think the article is not open to such construction. The evidence shows that the plaintiff was a typographer. We see nothing in this article which in any manner reflects upon the plaintiff in such or any trade, or profession, or calling, or affects him in a position of office or trust. A complete answer, however, to such contention is that the plaintiff did not, by way of innuendo or otherwise, place such a meaning upon the article; and, furthermore, it does not upon its face charge or import such meaning. An entirely different meaning by way of innuendo was placed upon it.

"Where plaintiff alleges a special meaning for the alleged libelous words sued on, that is the only meaning which the defendant need meet in pleading or on trial." (*Wuest* v. *Brooklyn Citizen* [Sup.], 76 N. Y. Supp. 706.)

However, had the plaintiff charged such meaning to the article it would have been of no avail, for the article is not fairly or even at all susceptible of such construction and an innuendo cannot enlarge the meaning of words or attribute to them a meaning which they will not bear. (18 Am. & Eng. Enc. L. 182.)

Likewise, to say, as was said here, by way of innuendo, that the plaintiff was brought into contempt and ridicule or was unfit to fill the position sought by him, gives no strength to the complaint, and amounts to nothing unless the words themselves import such charges. (*Divens v. Meredith* [Ind. Sup.], 47 N. E. 143.)

We, therefore, have left in the article the statement, in effect, that the plaintiff was indebted to the defendant, that the obligation has not been paid and an inference that plaintiff was able to pay. Here again, by way of innuendo, it is charged, "thereby meaning that the plaintiff had incurred an indebtedness which he never intended to pay." It may be to write and publish of one that he incurred an obligation or debt with the intention not to pay it, involves fraudulent doings and wrongful conduct, and may be *per se* actionable; especially if written of or concerning a trader or a merchant. But the language of the article does not bear the construction that the plaintiff had fraudulently or at all wrongfully incurred the indebtedness, and so again, by way of innuendo merely enlarging the meaning of the words gives no strength to the complaint. We then have the question reduced to the following proposition: To write and publish of one not a trader or merchant and not of or concerning his business affairs that he is indebted to another, and, though able to pay, has neglected or refused to do so, is that such an impeachment of honesty, or does it import such degradation of morals or character, or expose him to public hatred or ridicule, or tend to disgrace him, as a court can say its publication necessarily must, in fact, or, by a presumption of evidence, occasion damage and pecuniary loss to him, and, therefore, he was relieved from otherwise alleging or proving any? We think not. We are not saying that such language may not, as a natural and proximate consequence, occasion loss and damage; but the plaintiff, in order to recover, must allege and prove them.

"To publish of one that he has for several years owed for medical services; that his attention has been repeatedly called thereto to no purpose; that finally, being sued therefor, he, having no other defense, has cowardly slunk behind that of the statute of limitations; and that such a course is not in accordance with the writer's idea of strict integrity."

Was held not libelous *per se*. (*Hollenbeck v. Hall,* 103 Iowa 214, 72 N. W. 518, 39 L. R. A. 734, 64 Am. St. Rep. 175.)

So, to publish of one that he was indebted for a bill, but would not pay it, unless a certain sum was "knocked off," and that it was a "dirty Jew trick to try to beat the house," was held not libelous *per se*. (*Hanaw v. Jackson Patriot Co.,* 98 Mich. 506, 57 N. W. 734.) It was held not libelous *per se* to write and publish that J. D. U. should not be employed in the stock business or to transact any business with him at the stockyards until notified that he had settled with K. & S. for twenty head of cattle bought of them. (*Ulery v. Chicago Live Stock Ex.,* 54 Ill. App. 233.) It was also held that a publication in an abstract of unsettled accounts issued by a mercantile agency of a memorandum that a person, not a merchant or trader, was indebted in a certain sum, and that it had not been paid, was not libelous *per se*. (*Ery v. McCord Bros.,* supra.)

A notice published in a newspaper warning all persons against trading for two notes alleging that the plaintiff had obtained them without consideration from a person whose mental condition at the time was such as incapacitated him for business is not libelous *per se*. (*Trimble v. Anderson,* 79 Ala. 514.) To publish in a newspaper: "Wanted, E. B. Zier, M. D., to pay a drug bill, his room rent, and not go deadheading his way," was held not libelous *per se*. (*Zier v. Hofflin,* 33 Minn. 66, 21 N. W. 862, 53 Am. Rep. 9.) The following cases also illustrate that this character of language is not *per se* libelous. (*Homer v. Engelhardt,* 117 Mass. 539 ; *Wuest v. Brooklyn Citizen,* supra ; *Donaghue v. Gaffy,* 53 Conn. 43, 2 Atl. 397 ; Id., 54 Conn. 257, 7 Atl. 552 ; *Urban v. Helmick,* 15 Wash. 155, 45 Pac. 747.)

We think it is quite generally recognized that to write and publish that a party owes a debt, and has not paid it, is not of itself sufficient to make the publication libelous when such person is not engaged in business, or when it is not said of or concerning him in the conduct of his trade or business ; but that such words may be made libelous by proof of extraneous circumstances if special damages are shown. It may be conceded that words charging nonpayment of debts, insolvency, or which tend to impute want of credit or integrity, are actionable without alleging special damages when they refer to

merchants, tradesmen, and others in occupations where credit is essential to the successful prosecution; but, generally, these same words are not *per se* actionable when they do not refer to persons in their office, profession, trade, business, or calling. These matters are well illustrated by Newell (2 Ed.), pp. 192-197. To write and publish of a tradesman in his business that he is insolvent, or that he owes a debt of long standing which he has not paid must necessarily impair his credit, be harmful to his business, and result to his damage. But such presumption does not necessarily follow where such words refer merely to an individual, separate and distinct from any trade, business, or calling. Such words, however, may be rendered libelous by the place and circumstances of their publication, or by proof of extraneous matters, together with proof of damages other than those implied when shown to be the natural and proximate consequence of the publication. It is also claimed by appellant that by the expression, "Vote for Honest Jake Bosch," is implied that appellant, who was also a candidate, was dishonest. It does not bear such construction. To say of one candidate that he is honest does not carry the implication that the other candidates are dishonest. If these words by themselves were susceptible of such construction, it is certainly overcome by the explanation following where again we are brought to the statement of indebtedness. It may be well also here to note that these cards were circulated only among the members of the Typographical Union at Salt Lake City, which was occasioned by the candidacy of appellant, and Bosch for delegate to the convention of the National Typographical Union. The fact that one is a candidate for an office, affords, in many instances, a legal excuse for publishing language concerning him as such candidate, for which publication there would be no legal excuse if he did not occupy the position of such candidate. (*Sweeney v. Baker et al.,* 13 W. Va. 158, 31 Am. Rep. 757; *Greenwood v. Cobbey,* 26 Neb. 449, 42 N. W. 413.)

From what has been said, it necessarily follows that the judgment ought to be, and it therefore is affirmed, with costs.

McCARTY, J., concurs; BARTCH, C. J., dissents.