## LESLIE S. HIGH v. SUPREME LODGE OF THE WORLD, LOYAL ORDER OF MOOSE.[1]

January 2, 1943.

No. 33,284.

*Leslie S. High, pro se.*
*A. A. Toivonen* and *W. F. Dacey,* for respondent.

PETERSON, JUSTICE.

This appeal from an order sustaining defendant's demurrer to the complaint raises the question whether the complaint states facts sufficient to constitute a cause of action. The complaint, which abounds in statements of evidence, inferences, and conclu-

[1]Reported in 7 N. W. (2d) 675.

sions, is several times too long. It is with no little difficulty that we ascertain the ultimate facts upon which plaintiff relies as a basis for recovery. With considerable misgiving we shall state the facts pleaded as we understand them.

For many years the financial affairs of Duluth Lodge No. 505, a subordinate lodge of defendant, had been so mismanaged that its very existence was threatened. From May 1, 1935, to May 1, 1936, plaintiff, an attorney at law, was its "Dictator" and as such its chief executive officer.

The mismanagement related to four items: (1) Delinquency in payment by the Duluth lodge to defendant of over $12,000 representing a portion of the membership dues; (2) unpaid certificates of indebtedness aggregating $12,000 held by 100 members issued by the Duluth lodge to equip and furnish a building which it purchased for a lodge home; (3) the wrongful expenditure of $12,495.10 belonging to the beneficiary fund for payment of benefits to members, concerning which we said in High v. Supreme Lodge, 210 Minn. 471, 472, 298 N. W. 723, 724, was "in violation of specific rule," and that "an auditor representing the Supreme Lodge [defendant] authorized the transfer of this overdraft to the general revenue fund"; and (4) other groups of obligations aggregating $37,000.

During his regime as "Dictator" plaintiff undertook the task of liquidating the indebtedness and bringing order out of the financial chaos. Some considerable progress had been made when his term expired. He wanted to turn the work over to his successor and to be relieved of further responsibility. At the request of defendant he continued to act, not as an officer of the lodge, but as an attorney at law. A plan formulated by him for the purpose of paying off the indebtedness was formally adopted by the lodge, and apparently all creditors accepted it. Formulation and execution of the plan required extensive legal and administrative services on plaintiff's part between May 1, 1935, and April 1, 1938, for which he charged defendant. A dispute followed, as a result of which plaintiff sued defendant and recovered therefor the sum of $2,000. In High v. Supreme Lodge, 210 Minn. 471, 473, 298

N. W. 723, 725, we upheld the recovery, stating that plaintiff "accomplished such results that 'all of the obligations of Duluth Lodge * * * had been compromised, adjusted, and settled, through the payment of approximately the sum of $13,000, its morale has been sustained, and its membership substantially retained.' "

In executing the plan a great deal of friction arose between plaintiff and defendant, due, as plaintiff alleges, to the fact that defendant compelled the Duluth lodge to deviate from the plan in order to favor certain creditors who were prominent and active in lodge affairs. The relations of the parties changed from one of the utmost good will and cordiality, as evidenced by defendant's "General Dictator's" letter to plaintiff in January 1937 expressing "gratitude" for doing "a good job," which the General Dictator said was 'a clear demonstration that when the right man undertakes to do the right kind of a job from an honest standpoint little or nothing can prevent him from accomplishing his objective," to one of extreme animosity, some months later, as a result of which defendant informed plaintiff in effect that the further execution of the plan was no concern of his and that it intended to act in its own way.

In August 1938 an auditor of the defendant made a report of his audit at a regular lodge meeting. In his oral report he used the following language:

"It is true that this Lodge is in considerably better financial condition than when the last audit was made by the Supreme Lodge in February, 1936; but it is not in nearly as good financial condition as it is made to appear; in connection with adjustment of Certificates of Indebtedness issued by this Lodge a very slipshod, careless and unsatisfactory job has been done. Adjustment of these Certificates of Indebtedness has been made in an inconsistent, hit or miss manner without in any respect following any consistent or orderly plan. Some certificates have been paid and some not paid. Some of these certificates have been, by action of the Lodge taken from its list of obligations. Holders of Certificates so acted upon, may, if dissatisfied, compel payment. This.

Lodge can be forced to back up on action which it has taken in connection with such Certificates of Indebtedness. Holders can legally compel this Lodge to pay. Altogether, the matter of adjustment of Certificates of Indebtedness issued by this Lodge has been handled in such an inconsistent, unsatisfactory, hit or miss manner, that the whole matter of these certificates is not to be considered in any respects definitely and finally settled. This Lodge had better watch its step."

It is alleged that these words were spoken of and concerning the services rendered by plaintiff as an attorney at law in bringing about the adjustment and settlement of the Duluth lodge indebtedness; that the words are defamatory and false; that they were uttered with express malice; and that, because of extensive publication, they tend to injure the plaintiff in the practice of his profession as an attorney in the city of Duluth. It is alleged that these words are actionable *per se;* no special damages are pleaded.

■ A defamatory charge imputing to a professional man such as an attorney or a physician lack of due qualification, misconduct, or want of integrity is slanderous and actionable *per se.* Gribble v. Pioneer Press Co. 34 Minn. 342, 25 N. W. 710; Sharpe v. Larson, 67 Minn. 428, 70 N. W. 1, 554; *Id.* 70 Minn. 209, 72 N. W. 961; Brill v. Minnesota Mines, Inc. 200 Minn. 454, 274 N. W. 631, 112 A. L. R. 173.

Of course, the words must relate to the attorney in his professional capacity and not merely as an individual without regard to his profession. McDermott v. Union Credit Co. 76 Minn. 84, 78 N. W. 967, 79 N. W. 673.

Defendant's main point is that the comment and criticism in the instant case, if at all applicable to plaintiff, does not constitute slander within the rule, because it relates not to plaintiff's professional character generally as an attorney at law, but only to a single, specific act, citing in support of that view Foot v. Brown, 8 Johns. (N. Y.) 64, where in a per curiam opinion the court held that it was not slander to charge "a professional man with igno-

rance in a *particular* case." This case was cited, and apparently relied on, below.

Our rule is settled contrary to defendant's contention. In Pratt v. Pioneer Press Co. 30 Minn. 41, 14 N. W. 62; *Id.* 32 Minn. 217, 18 N. W. 836, 20 N. W. 87; *Id.* 35 Minn. 251, 28 N. W. 708, a defamatory charge was made against a physician relating to his professional conduct in a particular case. Mr. Justice Mitchell speaking for the court in 35 Minn. at p. 255, 28 N. W. 710, said:

"But, on the other hand, it is evident that a false report concerning a physician, *although confined to his conduct in a particular case,* and although it imputed to him neither a crime nor general professional incompetency, might, nevertheless, imply such gross ignorance, or such gross and reckless or inhuman disregard for the health or life of his patient, in that particular instance, as necessarily to injure his professional reputation, and hence cause him pecuniary damage. Such language is actionable without alleging special damage, because damage would be presumed as the necessary or natural effect of such a charge." (Italics supplied.)

We there held that the test for determining the actionable quality of words spoken concerning a professional man is whether they ascribe to him merely (35 Minn. 254, 28 N. W. 710) "such want of information or good management as is compatible with general skill and care in his profession" (see Sjobeck v. Leach, 213 Minn. 360, 6 N. W. [2d] 819), or impute to him general incompetency, gross ignorance, or gross negligence in the discharge of his professional duties.

Where the defamatory words charge not merely "simple neglect or oversight," but "gross, culpable neglect," the language is susceptible of a meaning imputing lack of general professional ability, skill, and character. In cases of this kind, as in others, a great deal of common sense should be exercised. In the Pratt case, 35 Minn. 251, 255, 28 N. W. 708, 710, holding that a charge of gross negligence against a physician in a particular case is susceptible

of an imputation against his professional character generally, we said:

"The common sense of any man will tell him that the natural, and indeed necessary, effect of such a charge against a physician, if believed, would be to injure his professional reputation. If so, the language is actionable *per se*, and it is not necessary either to allege or prove special damage. See *Sumner v. Utley*, 7 Conn. 257."

We cannot follow the rule of Foot v. Brown, 8 Johns. (N. Y.) 64, *supra*, upon which defendant relies, because that case is unsound and has been thoroughly repudiated as an authority, and because in the Pratt case we adopted a rule to the contrary. Foot v. Brown was decided upon the authority of Poe v. Mondford, 2 Cro. Eliz. 620, where it was held not actionable to say of a physician that "he hath killed a patient with physic." Later English cases have entirely repudiated Poe v. Mondford by holding to the contrary and by ignoring it as an authority. Tutty v. Alewin, 11 Mod. 221; Onslow v. Horne, 3 Wils. C. P. K. B. 177. For that reason, and because the case is not sound on principle, later American cases have not followed Foot v. Brown. Johnson v. Robertson, 8 Port. (Ala.) 486; Sumner v. Utley, 7 Conn. 257, *supra*. In Secor v. Harris, 18 Barb. (N. Y.) 425, the New York court, after reviewing the American and English authorities, expressly disapproved Foot v. Brown, and held that words imputing to a physician gross ignorance and want of skill in his profession in a particular case are slanderous *per se* (18 Barb. 428) "upon the ground that the law presumes damage to result from the very nature of the charge." In later cases, the rule of Secor v. Harris, not that of Foot v. Brown, has been approved and followed. Gauvreau v. Superior Pub. Co. 62 Wis. 403, 22 N. W. 726. In Pratt v. Pioneer Press Co. 35 Minn. 251, 28 N. W. 708, *supra*, we cited and followed Sumner v. Utley, 7 Conn. 257, which not only disapproved Foot v. Brown, but Poe v. Mondford, 2 Cro. Eliz. 620, upon the authority of which the Foot case was decided. In-

ferentially at least, by following Sumner v. Utley we also disapproved Foot v. Brown.

In the instant case the words spoken concerning plaintiff are susceptible of an imputation of gross ignorance and gross negligence on the part of plaintiff as an attorney. In effect, the charge was that plaintiff as an attorney advised the Duluth lodge and its creditors to adopt a plan for the adjustment and settlement of its indebtedness which was without effect. The auditor stated that "the whole matter of these certificates is not to be considered in any respects definitely and finally settled" and that notwithstanding the settlement dissatisfied holders could compel payment. All this he charged was the consequence of "a *very slipshod, careless* and unsatisfactory *job*" in connection with the adjustment and of the fact that the adjustment was made "in an inconsistent, hit or miss manner without in any respect following any consistent or orderly plan." (Italics supplied.) Both "careless" and "slipshod" import negligence. Webster's New International Dictionary (2 ed.) pp. 406, 2367. "Very" as used in this connection connotes "exceedingly," "extremely," "the highest degree." *Id.* p. 2836; Benoist v. Driveaway Co. (Mo. App.) 122 S. W. (2d) 86, 90; Central Tex. & N. W. Ry. Co. v. Smith (Tex. Civ. App.) 73 S. W. 537; Parker v. Boston & M. R. 84 Vt. 329, 79 A. 865. Negligence of the highest degree is gross negligence. In Dakins v. Black, 195 Minn. 91, 94, 261 N. W. 870, 872, we defined gross negligence as meaning "negligence in a very high degree," "great or excessive negligence." According to such a definition, the charge against plaintiff here is equivalent to one of gross negligence. The charge was, therefore, not merely of simple or ordinary negligence, but of gross and culpable neglect and bungling. See Pratt v. Pioneer Press Co. *supra,* 35 Minn. at p. 255, 28 N. W. 708. It imputes a degree of negligence making plaintiff liable in damages for breach of duty as an attorney at law. Sjobeck v. Leach, 213 Minn. 360, 6 N. W. (2d) 819, *supra.* The words spoken have a tendency to hurt and prejudice plaintiff generally as an attorney in earning a livelihood in the practice of his profession.

■ Benevolent and beneficial associations, corporate and noncorporate, are liable in tort the same as other groups of individuals. They enjoy no immunity from liability for the torts of their agents in virtue of their benevolent and charitable features. Malmsted v. Minneapolis Aerie No. 34, 111 Minn. 119, 126 N. W. 486, 137 A. S. R. 542; 38 Am. Jur., Mutual Benefit Societies, p. 582, § 188. In Supreme Lodge v. Kenny, 198 Ala. 332, 73 So. 519, L. R. A. 1917C, 469, this defendant was held liable in tort under the rule. Cf. Geiger v. Simpson M. E. Church, 174 Minn. 389, 219 N. W. 463, 62 A. L. R. 716.

Reversed with directions to overrule the demurrer.